In the Matter of **PENN CENTRAL TRANSPORTATION COMPANY,** Debtor (Order No. 263).

In re **PETITION of CONSOLIDATED EDISON for SECURITY DEPOSIT and PAYMENT of PRE–BANKRUPTCY BILLS.**

No. 70–347.

United States District Court, E. D. Pennsylvania.

May 17, 1971.

Marvin Comisky, Blank, Rome, Klaus & Comisky, Philadelphia, Pa., for Trustees, Penn Central Transportation Co.

Aaron M. Fine, Harold E. Kohn, Philadelphia, Pa., for Consolidated Edison of New York, Inc.

## MEMORANDUM

FULLAM, District Judge.

When the Debtor went into reorganization on June 21, 1970, it owed Consolidated Edison of New York, Inc., (hereinafter Con Ed) approximately $1,200,000 for electricity and steam services furnished, chargeable to some 124 separate accounts. Shortly thereafter, before the Trustees had been appointed, Con Ed joined with various other utilities in petitioning the Court for an order requiring the Debtor to pay its past due bills, and also to pay current bills as they became due. In addition, Con Ed sought an order of Court requiring the Debtor to post a deposit in cash, as security for future bills, as authorized under state law.

On July 8, 1970, I entered Order No. 18, which (1) directed the Debtor to pay all current bills for electrical and steam services, within 15 days after the bills were rendered; (2) deferred ruling on the claim for payment of pre-bankruptcy claims, pending review of the matter by the Trustees; and (3) denied Con Ed's petition for security deposit, without prejudice to a renewal of the request later, if circumstances changed.

Con Ed has renewed its request for an order requiring the Trustees to pay the pre-bankruptcy claims, totalling approximately $1,200,000, and also requiring the Trustees to deposit with Con Ed the sum of $1,726,215 as security for the payment of utility bills hereafter accruing.

### I.  The Security Deposit

Con Ed invokes Section 120 of the Public Service Law of the State of New York, 47 McKinney's Cons.Laws of New York Ann. c. 48, § 120 (1970):

"[A]n electric corporation * * * may require any person to whom such corporation * * * shall supply * * * electric * * * steam * * * services to deposit a reasonable sum of money according to the estimated quantity of such services necessary to supply the same for two calendar months, to secure payment for such services actually rendered. * * * "

and the further provision of Section 15 of the Transportation Corporation Law, 62 McKinney's Cons.Laws of New York Ann. c. 63, § 15 (1970):

"If any persons supplied with gas or electric light by any such corporation * * * shall refuse or neglect, after being required so to do, to make the deposit required, such corporation may discontinue the supply of gas or electric light to the premises of such person. * * * "

█ If the statutory language "a reasonable sum of money according to the estimated quantity of such services necessary to supply the same for two calendar months" fixes the amount of the deposit at the total sum which would pay two months' bills, then the deposit requested would be approximately correct

**1278**

in amount; Debtor's bills due Con Ed average $25,000 to $30,000 per day. Whether the quoted language might be susceptible to a more flexible interpretation, in view of the magnitude of the sums involved here, need not be decided, for I am satisfied that no deposit should be required at this time.

Con Ed has the security of a Court order directing the Trustees to make current payments. All current bills are being honored. Except for a few minor delays not attributable to the Trustees, Order No. 18 has been and is being fully complied with. If Con Ed is entitled to require a security deposit, then so are all of the other 40-odd utilities which furnish substantial amounts of power to the railroad; yet requiring such deposits would likely make it financially impossible for the railroad to operate at all. The provisions of state law must yield to § 77 on this issue.

### II. Pre-Bankruptcy Bills

Petitioner invokes the so-called "necessity of payment" rule in support of its renewed application for payment of pre-bankruptcy claims. Under this doctrine, certain unsecured claims incurred in operating the railroad may be entitled to priority over secured claims, on the theory that the corpus would be unjustly enriched otherwise. *See*: Gregg v. Metropolitan Trust Co., 197 U. S. 183, 25 S.Ct. 415, 49 L.Ed. 717 (1905); Miltenberger v. Logansport, C. & S. W. Railway Co., 106 U.S. 286, 1 S. Ct. 140, 27 L.Ed. 117 (1882); In re New York, N. H. & H. R., 278 F.Supp. 592, 602 (D.Conn.1967). However, assuming the existence and applicability of this doctrine, it does not require immediate payment, but rather deals with the assignment of priorities as among claims.

In the present situation, the decision of the Trustees to protect the cash position of the Debtor, in the interests of viability for the benefit of all its creditors, by deferring these payments, is clearly justified.