**In the Matter of FONTAINEBLEAU HOTEL CORPORATION, Debtor.**

**SOUTH CENTRAL BELL TELE-PHONE COMPANY, Appellant,**

**v.**

**Warren M. SIMON and P. Val Miller, Trustees for Fontainebleau Hotel Corporation, Debtor, Appellees.**

**No. 74–3529**
**Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

Feb. 28, 1975.

Rehearing and Rehearing En Banc Denied April 28, 1975.

---

* Rule 18, 5 Cir.; *see* Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5 Cir., 1970, 431 F.2d 409, Part I.

Raymond J. Salassi, Jr., New Orleans, La., for appellant.

Edward J. Boyle, Jr., Edward M. Heller, New Orleans, La., for appellees.

Before BROWN, Chief Judge, and THORNBERRY and AINSWORTH, Circuit Judges.

AINSWORTH, Circuit Judge:

South Central Bell Telephone Company appeals from a preliminary injunction, entered by the District Court sitting in bankruptcy, compelling it to provide continued telephone service to the debtor, Fontainebleau Hotel Corporation. Under the plan devised by the District Court, the telephone company is to receive payment in advance for each month's service and the hotel is to be permitted to retain the telephone numbers it was using before the filing of the petition in bankruptcy. We affirm.

I. Factual Background

The telephone company has been providing service to the Fontainebleau Hotel for some time. In July 1974, the hotel fell behind on its bills. On August 1, 1974, the hotel filed a petition for reorganization under Chapter X of the Bankruptcy Act. The hotel then owed the telephone company slightly more than $9,000 in unpaid bills, which the company had taken no steps to collect.

The company notified the bankruptcy trustees of this debt and gave them two alternatives, based on procedures described in its tariff on file with the Louisiana Public Service Commission: pay the outstanding prebankruptcy debt and continue with the existing service, or begin with new service under a new set of telephone numbers. In either case, the company insisted upon a substantial deposit as a precondition to further service.

The trustees immediately filed an application for injunctive relief with the bankruptcy court, asking that the company be enjoined from requiring payment of the overdue bill and a deposit as a precondition to continued service under the existing set of telephone numbers. Keeping the present numbers is important to the hotel because it has invested substantial sums in advertising that lists the numbers. Also, the telephone company would not provide the new number, technically assigned to the trustees, to callers who telephone the hotel's old number. The company has virtually conceded that it has no business purpose in changing the numbers, other than coercing the payment of this debt. The bankruptcy court found that the hotel's business would be substantially impaired if it could not keep the present numbers, and granted the trustees' application for an injunction.

## II. Issues on Appeal

The telephone company raises these issues on appeal: (A) that the bankruptcy court lacked summary jurisdiction to enter the injunction; (B) that even if jurisdiction was proper, the bankruptcy court erred in entering the injunction because the telephone company is empowered under its tariffs to change telephone numbers and require deposits of subscribers; (C) that alternatively the company has a right to priority on this debt under the so-called "necessity of payment rule" or "six months rule"; (D) that the hotel did not carry its burden of proving the necessity of the injunction; and (E) that at the very least the bank-

ruptcy court should have required the hotel to post a security bond to insure that the telephone company would not ultimately be deprived of its money.

### A.

The District Court's action on the trustees' application for a preliminary injunction was a summary, rather than a plenary, proceeding. Collier, Trustees' and Receivers' Handbook § 2.007. The Bankruptcy Act provides that "[w]here not inconsistent with the provisions of this chapter [ten], the court in which a petition is filed shall, for the purposes of this chapter [ten], have exclusive jurisdiction of the debtor and its property, wherever located." This provision grants summary jurisdiction to the bankruptcy court in order to assure a speedier resolution of disputes over insolvent estates. *See* Collier, *supra*, at § 2.007.

For the bankruptcy court to have summary jurisdiction, the debtor or his trustee must have possession, constructive or actual, of the property in question. He need not, however, have title to the property. In construing identical language in the bankruptcy provisions relating to railroad reorganization, the Supreme Court has said

> Bankruptcy courts have summary jurisdiction to adjudicate controversies relating to property over which they have actual or constructive possession. And the test of this jurisdiction is not title in but possession by the bankrupt at the time of the filing of the petition in bankruptcy.

Thompson v. Magnolia Petroleum Co., 309 U.S. 478, 481, 60 S.Ct. 628, 630, 84 L.Ed. 876 (1940); *see* In re Rehkopf Mattress Sales, Inc., 5 Cir., 1973, 479 F.2d 67, 70; Schokbeton Industries, Inc. v. Schokbeton Products Corp., 5 Cir., 1972, 466 F.2d 171, 177; Willyerd v. Buildex Company, 6 Cir., 1972, 463 F.2d 996, 999. The same test applies in Chapter X proceedings:

It is often said that the touchstone of the bankruptcy court's jurisdiction is possession, either actual or constructive, of the property involved in the controversy. . . . Thus, if the receiver or the trustee has physical possession of the property involved in the controversy, the power of the bankruptcy court to deal with this property in a summary fashion is clearly established. Collier, *supra*, at § 2.008.

■ The question thus is, did the hotel have "possession" of the telephone numbers in question at the time the petition was filed? Right of use is surely the most important attribute of possession, and the hotel clearly had the right of use as to these telephone numbers at the time the petition in bankruptcy was filed.

Two other circuits have held that the right to use a telephone number does not constitute possession of that number. *See* In re Best Re-manufacturing Co., 9 Cir., 1971, 453 F.2d 848; Slenderella Systems of Berkeley, Inc. v. Pacific Telephone and Telegraph Co., 2 Cir., 1960, 286 F.2d 488. Both of these cases are extremely brief discussions of the issue, however, and we believe they should not be followed. They rely heavily on the fact that, as in this case, the telephone company tariffs recited that a subscriber acquires no property rights in a telephone number when he is permitted the use of it. A tariff, however, drafted by the company and certain to be self-serving, cannot determine the meaning of the term "property" in the federal bankruptcy statute. The telephone numbers are a valuable asset, just like the hotel's building or furniture. The purpose of summary jurisdiction is to give the bankruptcy court a quick means of preserving the wherewithal for maintaining the debtor's business. Protecting use of the telephone numbers by the debtor clearly falls within that responsibility.

## B.

■ Once the issue of the bankruptcy court's power, jurisdictionally, over the property is resolved, its authority to issue protective orders against interference with that property follows naturally. It also follows that the telephone company's tariffs do not stand in the way of the injunction issued by the bankruptcy court. The tariffs, and the relevant portions of state law, do not compel the company to issue new numbers when service is transferred from one subscriber to another (here, from the hotel to the trustees), or to demand a deposit. Rather they only give the company the right to do these things. In this regard the tariffs and related laws are no different from any state law granting a party a right against a debtor. If a debtor becomes delinquent on a loan payment, for example, the creditor is entitled, under state law, to recover a judgment on the debt. If the creditor has not done so by the time a bankruptcy petition is filed by the debtor, however, his state law right is subordinated to the federal bankruptcy laws (assuming of course that the creditor does not hold a security interest in any of the debtor's property). The telephone company has offered no cogent reason why it should be treated differently. Before the filing of the petition, it had certain rights under state law. After the filing of the petition, the demands of the bankruptcy laws take precedence. If a creditor, like the telephone company, could continue to enforce his state law rights after the initiation of bankruptcy proceedings, the bankruptcy laws would be meaningless. Their very purpose is to suspend the normal operation of rights and obligations between the debtor and his creditors.

The Third Circuit has expressed a similar view in a case very much like the present one. A utility company was owed $1,200,000 by the bankrupt Penn Central Transportation Company. The court observed:

> Con Ed has the security of a Court order directing the Trustees to make current payments. All the current bills are being honored. . . . If Con Ed is entitled to require a security

deposit, then so are all of the other 40-odd utilities which furnish substantial amounts of power to the railroad; yet requiring such deposits would likely make it financially impossible for the railroad to operate at all. The provisions of state law must yield to § 77 [the predecessor of Chapter Ten, for railroads] on this issue.

In re Penn Central Transportation Co., 3 Cir., 1972, 467 F.2d 100, 103.

### C.

■ The six months rule is a judicially created priority granted in Chapter X proceedings to certain creditors of public and quasi-public enterprises providing essential services to the public. Those who extend credit to such enterprises within six months of the filing of a bankruptcy petition under Chapter X take priority over unsecured creditors. *See* In re Hallmark Medical Services, Inc., 5 Cir., 1973, 475 F.2d 801, 803–804. Even assuming the telephone company is among the class of creditors the rule is designed to benefit, however, the six months rule does not create a right to payment of pre-bankruptcy debts before a plan of reorganization or distribution is adopted. Rather it creates a priority based on whatever plan is eventually adopted. In re Penn Central Transportation Company, E.D.Pa., 1971, 328 F.Supp. 1276, 1278. Therefore the telephone company's invocation of the six months rule, even if correct on the merits, is premature.[1]

### D.

■ In determining whether the hotel carried its burden of establishing the need for a preliminary injunction, we must stay within the limited scope of review that governs appeals from such orders. "The granting or denying of a preliminary injunction is within the discretion of the trial Judge, 'in the exercise of which the court balances the conveniences of the parties and possible injuries to them according as they may be affected by the granting or withholding of the injunction.'" Wooten v. Ohler, 5 Cir., 1962, 303 F.2d 759, 761–762, and cases cited therein [quoting Yakus v. United States, 321 U.S. 414, 440, 64 S.Ct. 660, 675, 88 L.Ed. 834 (1944)]; Nalco Chemical Co. v. Hall, 5 Cir., 1965, 347 F.2d 90, 92; Delaware & Hudson Railway Co. v. United Transp. Union, 1971, 146 U.S.App.D.C. 142, 450 F.2d 603, 619 (standard of review is "whether the trial judge abused his discretion in granting the injunction, or rested his analysis upon an erroneous premise"); Commonwealth of Pa. ex rel. Creamer v. U. S. Dep't of Agr., 3 Cir., 1972, 469 F.2d 1387, 1388; National Land & Investment Company v. Specter, 3 Cir., 1970, 428 F.2d 91, 95 (standard of review is "whether there has been an abuse of [the court's] discretion, whether there was an error of law or whether a clear mistake was made in the consideration of the proof"); Impeach Nixon Committee v. Buck, 7 Cir., 1974, 498 F.2d 37, 40; Allied Theatre Owners of Indiana, Inc. v. Volpe, 7 Cir., 1970, 426 F.2d 1002, 1003; Washington Capitols Basketball Club, Inc. v. Barry, 9 Cir., 1969, 419 F.2d 472, 476 (abuse of discretion is, in this context, "a plain error, discretion exercised to an end not justified by the evidence, a judgment that is clearly against the logic and effect of the facts as are found."); Nashville I–40 Steering Committee v. Ellington, 6 Cir., 1967, 387 F.2d 179, 182. Under any of these formulations of the standard of review, we believe the District Court quite properly relied on its familiarity with the debtor's financial circumstances as presented in the Chapter X proceedings. On the basis of this familiarity the Court determined that releasing $10,000 in operating capital or enduring the disruption, confusion and expense caused by changing the telephone numbers were unacceptable alter-

---

1. In the cases cited by the telephone company in which the courts have considered applying the six months rule, a plan of reorganization had already been adopted. In re Hallmark Medical Services, Inc., *supra*; Dudley v. Mealey, 2 Cir., 1945, 147 F.2d 268, 271, and cases cited therein.

natives from which to choose. We find no error in his determination.

E.

■ Usually applicants for preliminary injunctions must provide some form of security or bond in order to assure indemnification of any party wrongfully enjoined. Fed.R.Civ.P. 65(c). The Federal Rules also provide, however, that "These rules do not apply to . . . proceedings in bankruptcy or proceedings in copyright under Title 17, U.S.C., except in so far as they may be made applicable thereto by rules promulgated by the Supreme Court of the United States." Fed.R.Civ.P. 81(a)(1). General Order in Bankruptcy No. 37, promulgated by the Supreme Court and kept in force as to Chapter X proceedings by General Order in Bankruptcy No. 52 despite General Order 37's abrogation in other contexts, states "In proceedings under the [Bankruptcy] Act the Rules of Civil Procedure for the District Courts of the United States shall, in so far as they are not inconsistent with the Act, be followed as nearly as may be . . .." Several courts have found application of Rule 65(c) to summary bankruptcy proceedings to be inconsistent with the purposes of the Bankruptcy Act. *See* Magidson v. Duggan, 8 Cir., 1950, 180 F.2d 473, 479; Grenchik v. Mandel, D.Md., 1973, 373 F.Supp. 1298, 1302 n. 10; In re J. S. Gissel & Co., S.D.Tex., 1965, 238 F.Supp. 130, 134. *Compare* Halpert v. Engine Air Service, 2 Cir., 1954, 212 F.2d 860, 863, *with* Ferguson v. Bucks County Farms, Inc., 3 Cir., 1960, 280 F.2d 739, 744–746; Chatz v. Freeman, 7 Cir., 1953, 204 F.2d 764, 767–768. We believe these courts have correctly chosen not to compromise the bankruptcy court's ability to act in aid of its own jurisdiction.

We note that our decision does not determine the rights of the telephone company in any final sense. Rather we have required simply that the company wait, along with the hotel's other creditors, until a plan of reorganization is adopted. In the meantime, the trustees of this bankrupt must be given the latitude they need to revive the failing business.

Affirmed.