In the Matter of Walter J. KASSUBA
et al., Debtors.
No. 73 B 6938–73 B 6979.

United States District Court,
N. D. Illinois, E. D.
June 25, 1975.

Solomon, Rosenfeld, Elliott, Stiefel &
Engerman, Chicago, Ill., for appellant.

Gerald F. Munitz, Nachman, Munitz &
Sweig, Ltd., Chicago, Ill., for debtors.

MEMORANDUM OPINION

WILL, District Judge.

Southwestern Bell Telephone Company
(Bell) has appealed from an order of the
Bankruptcy Judge denying its applica-
tion for a payout order for telephone
service charges incurred by Walter J.
Kassuba, et. al. (Debtors) prior to the
filing of the Chapter XI petitions.

The facts are as follows:

1. The Debtors in possession are pri-
marily engaged in the development and
management of apartment buildings,
townhouses and motels throughout the
United States. Bell supplies telephone
service to certain of the Debtors' opera-
tions in Missouri, Texas and Kansas.

2. At the time the Chapter XI petitions were filed, December 21, 1973, the Debtors owed Bell $28,392.13. On December 28, 1973, the Bankruptcy Judge ordered Bell to continue servicing the Debtors' existing telephone numbers without payment of the past due charges and the Debtors and Bell entered into security arrangements satisfactory to Bell concerning the payment of current charges. Accordingly, Bell has continued to provide telephone service to the Debtors at the existing numbers.

3. On June 25, 1974, Bell filed an application for payout of the $28,392.13 for pre-Chapter XI services. In its application Bell asserted that the December 28, 1973 order requiring it to continue serving the Debtors at their existing telephone numbers was void since the numbers were not the property of the Debtors over which the Bankruptcy Court could exercise summary jurisdiction. It further asserted that, in order for the Debtors to keep the existing telephone numbers, they would have to pay any and all outstanding charges or, in the alternative, make application for new numbers with satisfactory security deposits.

4. On January 15, 1975, the Bankruptcy Judge denied the application for a payout and, in effect, reaffirmed his order of December 28, 1973, requiring Bell to continue to provide service to the Debtors' existing numbers. Bell thereafter filed this appeal.

Bell's principal contention on appeal is that the Bankruptcy Court under section 311 of the Bankruptcy Act (11 U.S.C.A. § 711) does not have summary jurisdiction over the Debtors' assigned telephone numbers. That section confers exclusive jurisdiction on the Bankruptcy Court over "the debtor and his property, wherever located."

Bell asserts that, since its Missouri tariff expressly provides that a customer has no property right in his telephone number and that Bell may change the telephone number of a customer whenever it deems it desirable in the conduct of doing its business to do so, the Debtor's existing telephone numbers are not "property of the debtor" and, accordingly, are not subject to the Bankruptcy Court's jurisdiction.

In support of its position Bell cites *In re Best Re-Manufacturing Co.*, 453 F.2d 848 (9th Cir. 1971), *cert. den.* 406 U.S. 919, 92 S.Ct. 1771, 32 L.Ed.2d 118 (1972); *Slenderella Systems of Berkeley* v. *Pacific T. & T. Co.*, 286 F.2d 488 (2nd Cir. 1961); and *Chemical Lime Co., Inc.* v. *West Penn Power Co.*, 24 F. Supp. 217 (M.D.Pa.1938), all of which conclude that the Bankruptcy Court does not have summary jurisdiction to enter an order requiring continuation of existing service.

The Debtors, on the other hand, rely on *South Central Bell Telephone Co.* v. *Simon*, 508 F.2d 1056 (5th Cir. 1975), and the decision of the Public Utilities Commission of California in *101 Plating Corporation* v. *The Pacific Telephone and Telegraph Company*, Case No. 9313, Decision No. 83824, decided December 17, 1974. The Fifth Circuit decision concludes that the Bankruptcy Court does have jurisdiction to order continuation of service to existing telephone numbers.

The California Commission concluded that requiring a Chapter XI debtor in possession to pay prefiling charges as a condition to retaining its existing numbers would constitute a state-created priority of payment in contravention of Section 64 of the Bankruptcy Act. On the other hand, it found that disconnection of existing numbers in the event of non-payment even though of limited duration pending connection of new telephone numbers and requiring the use of new numbers would frustrate the overall rehabilitation policy of the Bankruptcy Act. It therefore ordered the telephone company to cease and desist from disconnecting the existing service for failure to pay pre-Chapter XI telephone charges.

In the instant case, the Bankruptcy Judge rejected the contention that the provisions of Bell's Missouri tariff spec-

ifying that the subscriber has no property interest in a telephone number are controlling under the Bankruptcy Act. The Fifth Circuit, in *South Central Bell, supra,* reached the same conclusion, observing:

> A tariff, however, drafted by the company and certain to be self-serving, cannot determine the meaning of the term "property" in the federal bankruptcy statute. The telephone numbers are a valuable asset, just like the hotel's building or furniture. The purpose of summary jurisdiction is to give the bankruptcy court a quick means of preserving the wherewithal for maintaining the debtor's business. Protecting use of the telephone numbers by the debtor clearly falls within that responsibility.

The Bankruptcy Judge, as did the California Public Utilities Commission, noted that allowing Bell to recover its pre-filing charges, an unsecured claim, would be tantamount to a preference or priority and unfair to other unsecured creditors. To permit Bell to disconnect the existing service if it is not granted this preference or priority would be detrimental to the Debtors and their financial rehabilitation.

■■ We agree that tariffs filed by a utility with a state regulatory agency cannot determine the jurisdiction of a federal bankruptcy court. We also agree that all equitable considerations support the Bankruptcy Judge's actions in ordering continuation of Debtors' existing service and denying payment of charges incurred prior to the filing of the Chapter XI petition. There remains the question of whether the Bankruptcy Court had summary jurisdiction to enter such orders.

■ It is clear that, as used in the Bankruptcy Act, "property of the debtor" includes property of which the debtor has possession, either actual or constructive. It is not limited to property title to which is in the debtor. The Supreme Court in *Thompson* v. *Mag-*

*nolia Petroleum Co.,* 309 U.S. 478, at p. 481, 60 S.Ct. 628, at p. 630, 84 L.Ed. 876 (1940) held:

> And the test of this jurisdiction is not title in but possession by the bankrupt at the time of the filing of the petition in bankruptcy.

Applying this criterion to existing telephone numbers, the Fifth Circuit in *South Central Bell, supra,* concluded:

> The question thus is, did the hotel have "possession" of the telephone numbers in question at the time the petition was filed? Right of use is surely the most important attribute of possession, and the hotel clearly had the right of use as to these telephone numbers at the time the petition in bankruptcy was filed.

The Fifth Circuit concluded, therefore, that the Bankruptcy Court did have jurisdiction and the order requiring continuation of existing services was proper.

Bell urges that, even if the Bankruptcy Judge properly ordered it to continue service, the order denying payment of pre-filing charges was contrary to Bell's Missouri General Exchange Tariff which, Bell says, requires that a successor customer, in order to retain the same number, must assume all outstanding indebtedness. Two observations are relevant to and dispose of this contention.

■ First, the Debtors are the same customers. In Chapter XI proceedings, the debtor remains in possession subject to the orders of the Bankruptcy Court. There is not even a formal transfer of title to a receiver or trustee. The debtor in possession is not a "new customer."

Second, the state tariff does not compel Bell to require a new customer to assume all outstanding indebtedness of the prior customer. It merely authorizes it to do so. Moreover, tariffs are no different from any state law granting a party a right against a debtor. As the

Fifth Circuit properly pointed out in *South Central Bell, supra:*

> After the filing of the petition, the demands of the bankruptcy laws take precedence. If a creditor, like the telephone company, could continue to enforce his state law rights after the initiation of bankruptcy proceedings, the bankruptcy laws would be meaningless. Their very purpose is to suspend the normal operation of rights and obligations between the debtor and his creditors.

In light of all of the foregoing, the order of the Bankruptcy Judge is affirmed.