594 F.2d 1275
 5 Bankr.Ct.Dec. 147, Bankr. L. Rep. P 67,158
 In the Matter of U. S. FINANCIAL, INCORPORATED, a Delaware
Corporation, and Affiliates, Debtors.
Herbert J. SOLOMON, Reorganization Trustee, Plaintiff-Appellee,
v.
The PACIFIC TELEPHONE AND TELEGRAPH COMPANY, Defendant-Appellant.
 No. 77-2257.
 United States Court of Appeals,
Ninth Circuit.
 April 9, 1979.
 
 1
 Robert L. Bachman, San Diego, Cal., for defendant-appellant.
 
 
 2
 William G. Wilson, Rifkind, Sterling & Lockwood, Beverly Hills, Cal., for plaintiff-appellee.
 
 
 3
 Appeal from the United States District Court for the Southern District of California.
 
 
 4
 Before WRIGHT and WALLACE, Circuit Judges, and TEMPLAR, District Judge.*
 
 
 5
 TEMPLAR, District Judge.
 
 
 6
 This case raises an important issue concerning the constitutionality of Cal.P.U.C. 36-T, Rule 23(B) which permits a telephone company to obtain as a condition of continued service the payment of a debt incurred prior to the filing of a petition under Chapter XI of the Bankruptcy Act. Both courts below held that the Rule created a state priority which contravened the purpose and operation of the Bankruptcy Act and that the Rule was, therefore, invalid under the Supremacy Clause of the United States Constitution.
 
 FACTS
 
 7
 U. S. Financial, Inc. (USF) was a holding company whose affiliates and subsidiaries engaged in a wide variety of activities ranging from insurance to architecture. In late December of 1972, USF entered into a contract with appellant Pacific Telephone and Telegraph Company (PT&T) for telephone service pursuant to which PT&T supplied USF with a CENTREX II TELEPHONE SYSTEM.
 
 
 8
 On July 23, 1973, USF filed its petition for an arrangement under the provisions of Chapter XI of the Bankruptcy Act. At the time of filing the petition, USF and its affiliates (also referred to herein as debtors) owed the appellant $56,128.90 for telephone services rendered in May, June and July of 1973. Sometime between July 23, 1973 and November 9, 1973, the appellant threatened to discontinue telephone service to the debtors. The alternatives open to the debtors at the time were (1) to apply for new telephone service with the appellant and pay a "basic termination charge" in the amount of $21,124.00, (2) to retain the existing telephone service by tendering payment in full of the unpaid charges for services rendered on or before July 23, 1973, or (3) to pay the $21,124.00 "basic termination charge" and seek telephone service from another company. The debtors investigated the first and third alternatives and concluded that they would not be in the best interest of the estate. Accordingly, the debtors negotiated an agreement with appellant concerning the second alternative and submitted the agreement to the bankruptcy court for approval.
 
 
 9
 The bankruptcy court approved the agreement subject to the terms and conditions set forth therein and authorized the disbursement of $56,128.90 to PT&T as full payment for telephone services utilized on or before July 23, 1973. The order further stated that the payment was made "under protest and with reservation of the right to seek recovery of this amount in a court of competent jurisdiction." Pursuant to such authorization, USF drew a check on the estate account and paid appellant the sum of $56,128.90.
 
 
 10
 On September 23, 1975, the Chapter XI arrangement was converted into a proceeding under Chapter X of the Bankruptcy Act and appellee Herbert J. Solomon was duly qualified and appointed to act as reorganization trustee. On February 4, 1976, he exercised the right reserved under the bankruptcy court order and filed a complaint seeking to recover the $56,128.90 paid to PT&T. PT&T filed its answer on March 5, 1976 in which it admitted all of the allegations in the complaint except for the allegation in paragraph six pertaining to a decision of the California Public Utilities Commission which the trustee contended made the agreement unconstitutional. PT&T denied that the decision had any application to the agreement between it and the debtors and, on March 8, 1976, it submitted a memorandum to the court explaining why.
 
 
 11
 The trustee responded by filing a motion for judgment on the pleadings and supporting memorandum on June 23, 1976. In an opinion and order filed on June 28, 1976 and June 30, 1976, the bankruptcy judge found for the trustee and entered judgment on the pleadings. PT&T appealed the decision to the district court which affirmed. This appeal followed.
 
 DISCUSSION
 I.
 
 12
 The first and most important issue in this case concerns the validity of an agreement between a telephone company and a debtor under Chapter XI of the Bankruptcy Act which permits the utility company to receive payment during the pendency of the proceeding for services rendered prior to the filing of the Chapter XI petition. Appellant contends that Supersedure Tariff Schedule Cal.P.U.C. 36-T, 3d Revised Sheet, 72, Rule 23(B) expressly permitted its conditioning future telephone service on the payment of pre-filing indebtedness and that the estate, having accepted the benefits of the agreement, should be required to accept its burden as well.
 
 
 13
 Tariff Rule 23(B) provided at all times relevant to this litigation as follows:
 
 
 14
 "An applicant who otherwise qualifies for the immediate establishment of service under Section (A) of this rule May supersede the service of a subscriber discontinuing that service when the applicant is to take service on the premises where that service is being rendered and a written notice to that effect from both the subscriber and applicant is presented to the company and where An arrangement acceptable to the company is made to pay all unpaid charges and to assume all obligations of the outgoing subscriber in connection with the service existing on the date of supersedure . . . ." (Emphasis added.)
 
 
 15
 In support of its argument that this Rule permits the payment of pre-filing indebtedness, appellant cites the decision of this Court in the case of In re Best Re-Manufacturing Co., 453 F.2d 848 (9th Cir. 1971), Cert. denied sub nom. Rothman v. Pacific Telephone and Telegraph Co., 406 U.S. 919, 92 S.Ct. 1771, 32 L.Ed.2d 118 (1972). In Best, the issue before the Court was whether a debtor's old telephone number constituted a property interest sufficient to give the bankruptcy court summary jurisdiction to enjoin the telephone company from cutting off service. We held that it did not and, therefore, never reached the issue of whether the telephone company could require the debtor to pay pre-filing debts as a condition of future service.
 
 
 16
 Appellant contends that in at least two decisions lower courts have allowed the telephone company to recover pre-filing indebtedness. In re Boles-Aero, Inc., No. 133,531-WB (S.D.Cal. November 28, 1961); In re Idaho Maryland Industries, Inc., No. 137,024-WB (S.D.Cal. May 14, 1962). The Court has examined both decisions and found that they do not explain the basis for their holdings. Other courts faced with similar requests have uniformly denied relief. In the case of In re Kassuba, 396 F.Supp. 324, 326 (N.D.Ill.1975), the bankruptcy judge found that "allowing Bell (the telephone company) to recover its pre-filing charges, an unsecured claim, would be tantamount to a preference or priority and unfair to other unsecured creditors." The district court agreed and affirmed the refusal to allow payment of telephone charges incurred prior to the filing of the Chapter XI petition. An analogous situation existed in the Penn Central litigation where the court, upon finding that the debtor was paying its current bills, denied Consolidated Edison's request for immediate payment of pre-bankruptcy indebtedness for electrical service. In re Penn Central Transportation Co., 328 F.Supp. 1276 (E.D.Pa.1971), aff'd 467 F.2d 100 (3rd Cir. 1972).
 
 
 17
 Probably the best statement of why a utility's request for payment of pre-filing indebtedness should be denied appears in a Fifth Circuit opinion,[1] where the Court of Appeals observed:
 
 
 18
 "(T)ariffs and related laws are no different from any state law granting a party a right against a debtor. If a debtor becomes delinquent on a loan payment, for example, the creditor is entitled, under state law, to recover a judgment on the debt. If the creditor has not done so by the time a bankruptcy petition is filed by the debtor, however, his state law right is subordinated to the federal bankruptcy laws (assuming of course that the creditor does not hold a security interest in any of the debtor's property). The telephone company has offered no cogent reason why it should be treated differently. Before the filing of the petition, it had certain rights under state law. After the filing of the petition, the demands of the bankruptcy laws take precedence. If a creditor, like the telephone company, could continue to enforce his state law rights after the initiation of bankruptcy proceedings, the bankruptcy laws would be meaningless. Their very purpose is to suspend the normal operation of rights and obligations between the debtor and his creditors."
 
 
 19
 After careful consideration of the matter, we agree with the analysis of the Fifth Circuit Court of Appeals and with the courts below that, insofar as Tariff Rule 23(B) permits a utility company to obtain payment of pre-filing indebtedness during the pendency of proceedings, it contravenes the purpose and operation of Chapter XI of the Bankruptcy Act. Chapter XI allows the court to grant a stay against enforcements and adjudications of obligations of the estate. Sections 314, 325, 11 U.S.C. §§ 714, 725. The procedure has the objective of allowing troubled debtors to pay their bills and remain in business. In re Stockman Development Co., 447 F.2d 387, 390 (9th Cir. 1971), Cert. denied sub nom. Security Savings & Loan Ass'n v. Westinghouse Credit Corp., 405 U.S. 923, 92 S.Ct. 962, 30 L.Ed.2d 794 (1972). To the extent Rule 23(B) can be applied to force or coerce a debtor into preferring the telephone company over other creditors, it defeats the objectives of the Bankruptcy Act. Consequently, the Rule must yield under the Supremacy Clause of the United States Constitution. Public Utility District No. 1 of Pend Oreille v. United States, 417 F.2d 200, 202 (9th Cir. 1969); City of Los Angeles v. United States, 355 F.Supp. 461, 465 (C.D.Cal.1972); Perez v. Campbell, 402 U.S. 637, 648-49, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971).
 
 
 20
 Appellant contends that, notwithstanding the validity or invalidity of Tariff Rule 23(B), the debtors should not be relieved of their promise to pay because they adopted an executory contract for services and have accepted its benefits. We find no merit in this contention. The agreement between the parties which provided for the payment of pre-filing indebtedness could have but two purposes: (1) to prefer the telephone company over other creditors, or (2) to guaranty or secure future payments on the debtors' telephone bills. We have already held the first purpose to be in contravention of the Bankruptcy Act. The second purpose must also fail because it does not fall under the executory contract exception. An executory contract contemplates the rendition of future performance by a debtor. 8 Collier on Bankruptcy P 3.15(3). The bargained for performance in this case was the payment of pre-filing telephone bills and as such it preceded the rendition of continued telephone service. Appellant has not alleged that the pre-filing debt bore any relationship, as security or otherwise, to the future services which it agreed to provide. Under the circumstances, the Court fails to see how the promise to pay pre-filing indebtedness can be construed as an executory obligation of the agreement.[2]
 
 
 21
 Even if we were to hold that the debtors made a valid executory agreement to pay pre-Chapter XI telephone bills, the terms of that agreement would still preclude a finding for the appellant. The order authorizing the payment specified that the same would be made "under protest and with reservation of the right to seek recovery of this amount in a court of competent jurisdiction." Appellant had notice of this qualification and accepted the payment subject to its terms. Appellant was not required to accept these terms and could have refused. Its failure to do so cannot now be urged to estop the debtors from doing exactly what they indicated they would do, i. e., seek to recover the payment in a court of competent jurisdiction. The filing of the petition so impounds the property of the debtor that those who deal with it during the interim between filing and final disposition act at their peril. In re Engram, 156 F.Supp. 342, 347 (M.D.Ga.1957), aff'd Taylor v. Engram, 249 F.2d 441 (5th Cir. 1957), Cert. denied 356 U.S. 901, 78 S.Ct. 561, 2 L.Ed.2d 580 (1958). Appellant is a creditor who dealt with the assets of the Chapter XI estate during the pendency of proceedings and this Court will not relieve it of the consequences.
 
 II.
 
 22
 The second issue in this case concerns the jurisdiction of the bankruptcy court to grant judgment on the pleadings and the propriety of the court's order granting judgment to the trustee. Appellant contends that the bankruptcy court by granting judgment on the pleadings in effect assigned a property interest of PT&T and that the assignment was unlawful because the court had no jurisdiction to summarily transfer the appellant's property. In support of this contention, appellant once again refers the Court to its decision in the case of In re Best Re-Manufacturing Co., supra, 453 F.2d 848.
 
 
 23
 Appellant is correct in its interpretation of the Best decision which held that a debtor's proprietary interest in an old telephone number was insufficient to give the bankruptcy court summary jurisdiction to enjoin the telephone company from cutting off telephone service. But the factual background and the relief requested are quite different here. This case involves not the telephone number or the debtors' interest therein but the funds paid out of the Chapter XI estate for the use of appellant's telephone service. Under 11 U.S.C. § 711, once a petition for an arrangement is filed in the bankruptcy court, the court has exclusive jurisdiction of the debtor and his property, wherever located. The statute has been interpreted as conferring summary jurisdiction over a bank account in the debtor's name. RIC-WIL, Inc. v. First Pennsylvania Banking & Trust Co., 352 F.Supp. 782, 786 (E.D.Pa.1973). We hold that the bankruptcy court had before it an issue concerning the application of funds in the debtor's bank account and that it had, and under its order retained, summary jurisdiction over the funds in question.
 
 
 24
 In so holding we need not reconsider the issue of whether a debtor's interest in a telephone number will support a bankruptcy court's exercise of summary jurisdiction. It should be noted, however, that appellant in the case at bar consented in the first instance to the bankruptcy court handling the supersedure agreement and that no jurisdictional objections were raised in the appellant's answer to the trustee's complaint. Thus, appellant consented to the summary disposition of the issue and waived any objection it might have to the matter not being tried in a plenary proceeding. MacDonald v. Plymouth County Trust Co., 286 U.S. 263, 52 S.Ct. 505, 76 L.Ed. 1093 (1932); RIC-WIL, supra, 352 F.Supp. at 787-88.
 
 
 25
 Furthermore, we find it unnecessary to consider the merits of appellant's contention that the bankruptcy judge made an unlawful assignment of its property. This appeal concerns the entry of judgment on the pleadings. An examination of the pleadings shows that this defense was not raised and that the only issue upon which the parties disagreed involved the application to the instant case of the decision of the California Public Utilities Commission in 101 Plating Corporation v. Pacific Telephone and Telegraph Co., No. 83824. In passing on the propriety of the action taken by the bankruptcy court, the reviewing court must limit its review to matters properly before the bankruptcy judge at the time he entered the order. Matter of Colorado Corp., 531 F.2d 463, 467 (10th Cir. 1976). The only issue before the bankruptcy judge on the motion for judgment on the pleadings was the contention that Tariff Rule 23(B) contravened the provisions of the Bankruptcy Act. Inasmuch as we have held that the bankruptcy judge correctly decided this issue against appellant, it follows that he properly entered judgment on the pleadings in favor of the trustee.
 
 
 26
 Appellant contends, however, that the bankruptcy court erred in giving retroactive effect to the decision of the Public Utilities Commission in the 101 Plating case. This contention ignores the fact that the bankruptcy judge did not even mention the decision in his opinion. Instead, he cited the Perez and Fontainebleau cases, Supra, as supporting his finding that the tariff was in direct conflict with the Bankruptcy Act. Even if the bankruptcy judge had exclusively relied on the 101 Plating decision and applied it retroactively, we do not believe that such application would be improper under the due process clause. The due process clause does not make unconstitutional every law with retroactive effect. Only when the retroactive effects are so wholly unexpected and disruptive that harsh and oppressive consequences follow is the constitutional limitation exceeded. Hazelwood Chronic & Convalescent Hospital, Inc. v. Weinberger, 543 F.2d 703, 708 (9th Cir. 1976); see also Welch v. Henry, 305 U.S. 134, 146-151, 59 S.Ct. 121, 83 L.Ed. 87 (1938).
 
 
 27
 In this case, the decision of the bankruptcy judge was neither "wholly unexpected" nor "disruptive." This Court had never ruled on the issue of whether a telephone company could recover pre-filing indebtedness as a condition of future service. To interpret our decision in the Best case, Supra, as sanctioning this procedure involved a risk which appellant assumed when it entered into the agreement with the debtors. For appellant to come before this Court and claim that the bankruptcy court took its telephone numbers without due process of law completely ignores or misinterprets the action taken in this proceeding. The record fails to disclose that the bankruptcy judge ever made an assignment of appellant's telephone numbers. He did not order appellant to continue providing service to the debtors. On the contrary, he simply approved an agreement between the parties which resulted in such service being rendered. Also, appellant has failed to show that it has suffered or will suffer any damages as a result of the action taken by the bankruptcy court. Although appellant will have to take its place among other creditors awaiting payment, this is exactly what Congress intended when it passed the Bankruptcy Act. Accordingly, we find that appellant has not suffered any violation of its due process rights.
 
 
 28
 Appellant's final contention relates to the court's entry of judgment on the pleadings without holding a hearing and without affording appellant an opportunity to respond to the trustee's motion. As previously mentioned, the bankruptcy court had summary jurisdiction over the matters raised in the trustee's complaint. Appellant filed an extensive brief on the issues raised in the pleadings even before the trustee filed his motion for judgment. In light of these facts, we fail to see how appellant was prejudiced by the manner in which the bankruptcy court handled the trustee's motion. But even if the methods employed were improper, we would still decline to reverse the judgment below.
 
 
 29
 Appellant raises its procedural objections for the first time on appeal to this Court. Except in the case of jurisdictional questions or where particular circumstances indicate that injustices might otherwise result or where public policy requires, this Court declines to consider arguments for reversal not presented to the district court. Diamond Door Co. v. Lane-Stanton Lumber Co., 505 F.2d 1199, 1206 (9th Cir. 1974). In view of our holding on the constitutional question in this case, a remand on procedural grounds would not change the ultimate disposition of the trustee's motion. Consequently, the Court rejects appellant's procedural objections as untimely and without sufficient merit to warrant a reversal of this case.
 
 III.
 
 30
 The courts below correctly found that Tariff Rule 23(B) conflicted with the provisions of the Bankruptcy Act and that under the Supremacy Clause of the United States Constitution the Rule must yield to the paramount federal purpose. Since this was the only issue to be decided by the bankruptcy judge before entering judgment on the pleadings, it follows that the motion was properly granted.
 
 
 31
 The judgment of the district court is AFFIRMED.
 
 
 
 *
 Honorable George Templar, Senior U.S. District Judge, District of Kansas, sitting by designation
 
 
 [1]
 In re Fontainebleau Hotel Corp., 508 F.2d 1056, 1059 (5th Cir. 1975). See also Matter of Security Investment Properties, Inc., 559 F.2d 1321 (5th Cir. 1977), where the court explained its holding in Fontainebleau and held that the bankruptcy judge did not have summary jurisdiction to enjoin an electrical company from requiring a "security deposit" as a precondition of continued electrical service. The case did not, however, involve a pre-filing debt issue and the court was careful to note this difference without expressing an opinion on how it would deal with the question if presented
 
 
 [2]
 The Bankruptcy Reform Act of 1978, effective October 1, 1979, contains a section on utility service which will remedy many of the problems in this area. The Section which will be 11 U.S.C. § 366 states as follows:
 "(a) Except as provided in subsection (b) of this section, a utility may not alter, refuse, or discontinue service to, or discriminate against, the trustee or the debtor solely on the basis that a debt owed by the debtor to such utility for service rendered before the order for relief was not paid when due.
 "(b) Such utility may alter, refuse, or discontinue service if neither the trustee nor the debtor, within 20 days after the date of the order for relief, furnishes adequate assurance of payment, in the form of a deposit or other security, for service after such date. On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment."