**Janice CASTRO and Julie Bice, on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**Jule SUGARMAN, Secretary of the Washington State Department of Social and Health Services, Defendant and Third Party Plaintiff,**

v.

**UNITED STATES, et al., Third Party Defendants.**

**No. C86–987TB.**

United States District Court,
W.D. Washington,
at Tacoma.

Dec. 24, 1987.

Janet Varon, Yvette Hall War Bonnet, Evergreen Legal Services, Seattle, Wash., for plaintiffs.

Patricia K. Nightingale, Asst. Atty. Gen., Olympia, Wash., for defendant and third party plaintiff.

Anastasia K. Dritshulas, Asst. U.S. Atty., Seattle, Wash., for third party defendants.

FINDINGS OF FACT, CONCLUSIONS OF LAW; ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND PARTIALLY GRANTING PLAINTIFFS' MOTION TO SEVER AND REMAND STATE LAW CLAIMS

BRYAN, District Judge.

THIS MATTER comes before the Court on plaintiffs' motion for summary judgment and plaintiffs' motion to sever and remand state law claims. The plaintiffs appeared by their counsel, Janet Varon and Yvette Hall War Bonnet, Evergreen Legal Services, the defendant and third-party plaintiff appeared by Patricia Nightingale, Assistant Attorney General, and the third-party defendants appeared by Anastasia Dritshulas, Assistant United States Attorney, and P.K. Abraham, Assistant Regional Counsel, HHS. This Court having considered the record and files herein and briefs submitted by counsel, and having heard and considered oral argument, now, therefore, makes the following:

FINDINGS OF FACT

1. This Court has jurisdiction over this case pursuant to Title 28 U.S.C. §§ 1331, 1343(a)(3), and 1441.

2. The plaintiffs are, or have been, recipients of Aid to Families with Dependent Children (AFDC) assistance, residing in the State of Washington.

3. On April 15, 1987, this Court certified a class in this action, defined as:

all past, present and future AFDC recipients in Washington State who have been, are, or will be assessed overpayments due to their nonregistration for the WIN or Employment and Training (E & T) programs, excluding overpayments based on recipient-caused error, where (1) the recipient was not notified of the registration requirement, or (2) the recipient's previous exemption from WIN or E & T registration was later changed.

4. The AFDC Program is federally created and regulated pursuant to Title IV-A of the Social Security Act, 42 U.S.C. §§ 601 et seq. The administration of the AFDC program is a cooperative effort between the federal and state government. In Washington State, the program is administered by the Department of Social and Health Services (DSHS).

5. AFDC provides financial assistance to needy families with children.

6. A state participating in the AFDC program must submit and follow a state plan which conforms to federal regulations.

7. Some, but not all, AFDC recipients are required to register for the Work Incentive Program or E & T (hereinafter, "WIN") program as a condition of eligibility for AFDC. 42 U.S.C. § 602(a)(19). WIN is a program to help recipients to seek and maintain employment, and is fed-

erally funded and jointly administered in Washington State by DSHS and the Employment Security Department (ESD).

8. 45 C.F.R. § 224.20 requires DSHS to determine which AFDC applicants and recipients are exempt from WIN and which are required to register. It further requires DSHS to notify individuals to register for WIN and to refer them to ESD.

9. DSHS failed to determine or advise class members of their need to register for WIN. DSHS advised some class members they were exempt and failed to advise others to register for WIN.

10. DSHS policy and practice is to hold class members retroactively to the WIN registration requirement as a condition of eligibility for AFDC.

11. DSHS policy and practice is to find class members ineligible for benefits they received between the date they should have been advised to register for WIN and the date they did register.

12. This policy resulted in DSHS assessing overpayments of AFDC assistance against class members which they were required to repay.

13. DSHS policy and practice is based in some part on its interpretations of federal regulations and requirements.

14. DSHS advised plaintiff Janice Castro that she was exempt from registration for the WIN program. In July 1986, DSHS notified her that WIN registration had been a condition of her eligibility since October 1985. DSHS found her ineligible for the entire period and assessed an overpayment of $3,110.

15. DSHS never advised plaintiff Julie Bice that she was required to register for the WIN program until four months after she informed DSHS that she was attending school full time. DSHS found her ineligible for the caretaker portion of her grant for the entire period and assessed an overpayment of $368.

16. Except for the retroactive application of the WIN registration requirement, Janice Castro and Julie Bice and other members of the class met all eligibility requirements of the AFDC program. The payments made to class members were made by error of the State in administering the AFDC program.

17. There are no material facts at issue in the case between Plaintiffs and Defendant.

From the foregoing Findings of Fact, the Court now makes the following:

## CONCLUSIONS OF LAW

1. Any Findings of Fact more appropriately deemed Conclusions of Law are hereby incorporated as such.

2. The Court has jurisdiction over this case pursuant to Title 28 U.S.C. §§ 1331, 1343(a)(3), and 1441.

3. The State is required to follow federal law, regulations and guidelines in administering the AFDC program. 45 C.F.R. § 201.2.

4. The framework of federal regulations governing the AFDC program, and the state plan written in conformity with federal regulations, provide the basis for all AFDC eligibility determinations.

5. The state is required by federal regulations to take all reasonable steps necessary to recover overpayments. 45 C.F.R. § 233.10(a)(13)(i)(A), (B), and (E).

6. An "overpayment" is defined at 45 C.F.R. § 233.20(a)(13(i) as "a financial assistance payment received by or for an assistance unit for the payment month which exceeds the amount for which that assistance unit was eligible." The key issue in deciding whether class members were overpaid is whether they received an amount which exceeds the amount for which the unit or recipient was eligible. If class members were eligible to receive what they recieved, there were no overpayments.

7. 45 C.F.R. § 233.10(a)(1) provides, among other things, for reasonable classifications and eligibility conditions. It requires:

The groups selected for inclusion in the plan the eligibility conditions imposed must not exclude individuals or groups on an arbitrary or unreasonable basis,

and must not result in inequitable treatment of individuals or groups in the light of the provisions and purposes of the public assistance titles of the Social Security Act.

8. 45 C.F.R. § 233.10(a)(1) further requires that "Eligibility conditions must be applied on a consistent and equitable basis throughout the State;" and that "methods of determining eligibility must be consistent with the objective of assisting all eligible persons to qualify."

9. State regulations consistent with these federal requirements are found at WAC 388–38–030(1)–(4).

10. The foregoing regulations are consistent with the underlying principles governing public assistance, which require that it shall be consistent, equitable and fair to the recipients throughout the state. These general requirements must be considered in interpreting the more detailed requirements of the federal regulations and the State plan.

11. 45 C.F.R. § 206.10(a)(1) states that "Each individual wishing to do so shall have the opportunity to apply for assistance without delay." 45 C.F.R. § 206.10(a)(1)(i) states that "Each individual may apply under whichever of the State ... plans he chooses." 45 C.F.R. §§ 206.-10(a)(1)(ii) and (iii) provide for written application and provide that an applicant be assisted in the application process.

12. The State regulations at WAC 388–38–030(1) are consistent with the above federal regulations.

13. Once an applicant applies, DSHS is required to determine eligibility. 45 C.F.R. § 206.10 imposes this requirement and requires that determinations be made promptly.

■ 14. DSHS is also required to make the determination of who must register for WIN and who is exempt from registration, as well as to inform the individual of the registration requirement, if nonexempt, and to advise the individual where to register. 45 C.F.R. § 224.20(b), (c) and (e).

15. State regulations at WAC 388–38–030(4) and WAC 388–38–200(1) and (9) are consistent with the above federal regulations in imposing the responsibility for eligibility determination upon the State.

■ 16. The State is also required to give various notices under the AFDC program. 45 C.F.R. § 206.10(a)(2)(i) requires that "[a]pplicants shall be informed about the eligibility requirements and their rights and obligations under the program." Under this regulation, it is the duty of DSHS to provide adequate information about conditions of eligibility, which includes the duty to provide this information promptly and in writing. DSHS must also notify a recipient of eligibility when assistance is authorized, as to what is authorized, must notify a recipient of proposed action to terminate, discontinue, suspend or reduce assistance, and must follow other specific notice requirements. 45 C.F.R. § 205.10(a)(4)(i).

17. 45 C.F.R. § 224.20 requires DSHS to notify a recipient in writing of its decision regarding WIN registration.

18. State regulations consistent with these federal requirements that notices be given are found at WAC 388–38–030, WAC 388–38–200, and WAC 388–38–260.

19. Under the foregoing regulatory scheme, the State is obligated to give notices and to make determinations of eligibility. The regulatory scheme nowhere indicates that a person determined eligible by the State may become ineligible for that period because the State made a mistake in fulfilling the requirements placed on them by law in determining eligibility.

■ 20. Construing 45 C.F.R. § 224.20 as a whole, and in light of the clear obligations imposed upon the State by the above-described AFDC regulatory framework, WIN registration does not become a condition of eligibility until such time as DSHS makes a determination that a class member must register for WIN, notifies the individual of the requirement to register, and refers the individual to the WIN registration site. State regulations support this interpretation. A class member has no obligation to register unless and until notified to do so.

21. Based upon the above Conclusions of Law, class members are eligible for all assistance they received until notified to register for WIN, and therefore there is no overpayment to class members.

22. AFDC benefits are a protected property interest which cannot be diminished or denied without due process of law under *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

23. Cases regarding due process requirements in the retroactive application of a law are instructive, and set out some relevant policy considerations, though it is not necessary to reach these issues in deciding this case. *See, e.g., Matter of U.S. Financial, Inc.*, 594 F.2d 1275 (9th Cir. 1979); *Canisius College v. United States*, 799 F.2d 18 (2d Cir.1986). The Court must avoid reaching constitutional questions when, as here, a case can be resolved on other grounds.

24. The constitutional limit is exceeded, according to the *Matter of U.S. Financial Inc.* "only when the retroactive effects are so wholly unexpected and disruptive that harsh and oppressive consequences follow." 594 F.2d at 1281.

25. Under the legal analysis and factual application of the above cases, DSHS's retroactive imposition of the WIN registration requirement on class members appears similarly "harsh and oppressive". Class members, who relied on the prior representation that they were eligible in the absence of WIN registration suffered unexpected and disruptive effects. Class members' conduct would likely have been different if the registration requirement had been correctly applies from the start.

26. Retroactively imposed measures, including agency promulgated rules, require stricter scrutiny than prospective measures. *Daughters of Miriam Center for the Aged v. Mathews*, 590 F.2d 1250 (3d Cir.1978). The balancing of public and private interests shifts dramatically when a regulation is applied retroactively.

27. *Tambe v. Bowen*, 662 F.Supp. 939, 941–42 (W.D.N.Y.1987) describes policy considerations similar to those in this case:

> The burden is always upon those administering the plan to see to it that the needy are paid what they are entitled to when they are entitled to it.... To hold otherwise, as the Government urges, will allow the Government to benefit from a forfeiture of welfare benefits to which the needy were entitled and ultimately to reward the Government for its mistakes.

And

> There are several compelling reasons for not validating a policy that shortchanges people who have been found eligible for these very "barebones" subsistence dollars, that the responsible agencies refuse to pay. This policy would tend to encourage a social service agency to engage in budgetary belt tightening at an unconscionable cost to people already living below the poverty guideline.

28. The class members have not received any overpayment, and therefore the defendant State of Washington should be enjoined from collecting or assessing overpayments against the class members for not registering for the WIN program in the absence of a Department of Social and Health Services instruction to so register.

29. The issue of equitable estoppel, in view of the findings made, is a moot issue and will not be decided.

30. Plaintiffs are entitled to reasonable attorneys fees and costs pursuant to 42 U.S.C. § 1988.

Based on the foregoing, it is hereby

ORDERED:

1. Plaintiffs' Motion for Summary Judgment is GRANTED.

2. Class members are eligible for all AFDC they received until advised to register for WIN or E & T and provided an opportunity to do so.

3. Defendant Sugarman, his successors in office, agents, employees, and all persons acting in concert with them, are permanently enjoined from establishing ineligibility and from assessing and collecting overpayments against class members for failure to register for WIN or E & T, for assistance paid before being notified and given an opportunity to register, or for assistance paid to persons who were erroneously exempted from WIN OR E & T.

4. Defendant Sugarman shall, within 45 days of the date of this Order, cause a notice to be mailed to all persons who have full or partial outstanding AFDC nonfraud overpayment obligations to DSHS.

5. Within 75 days of the date of this Order, defendant Sugarman shall instruct each Community Service Office to put up poster notices containing information in both English and Spanish in conspicuous locations in the main waiting areas, shall cause a notice to be published in all major newspapers of general circulation in Washington State once a week for a four-week period, and shall cause public service announcements to be made on all Spanish language radio stations. The notices described in paragraphs 4 and 5 shall include an explanation of this action and shall provide notice of the opportunity to file a claim for cancellation of overpayments.

6. Defendant Sugarman shall establish a statewide claim procedure for implementing court-ordered relief. A claim form shall be enclosed along with each notice mailed pursuant to paragraph 4 of this Order. Claim forms shall also be made available at each community Service Office of DSHS. Each person of limited English proficiency shall receive an enclosure written in his or her primary language, which summarizes the subject of the communication and other relevant information.

7. The claim procedure shall provide reasonable deadlines for processing claims and shall require a written determination to be mailed to each claimant advising him or her of the results of this determination and of the right to request a fair hearing if aggrieved by the determination.

8. Defendant Sugarman, his successors in office, agents, employees, and all persons acting in concert with them, shall immediately (1) search all records in the DSHS Office of Financial Recovery for all overpayments assessed against class members, (2) cease collection and erase the balance due on any overpayment obligation relating to failure to register for WIN or E & T of all persons meeting the class definition, and (3) notify each such person in writing of the action taken.

9. Defendant Sugarman, his successors in office, agents, employees, and all persons acting in concert with them, shall identify all class members with outstanding overpayments and pending or adverse administrative decisions and judicial appeals of such overpayments and provide plaintiffs with a list of all such persons.

10. Defendant Sugarman shall adopt amendments to the Washington Administrative code and shall instruct all DSHS staff on procedures necessary to implement all provisions of this Order.

11. Plaintiffs' Motion to Sever and Remand State Law Claims is GRANTED IN PART. The issue of retroactive relief is remanded to Thurston County Superior Court. The issue of equitable estoppel need not be remanded in light of this Court's decision on plaintiffs' Motion for Summary Judgment.

12. In the event that retroactive relief is awarded by the Superior Court or agreed to by the parties, before the expiration of the time periods ordered for notice in paragraphs 4 and 5, respectively, the parties may petition this Court for an order extending time for the implementation of notice of relief.

13. Plaintiffs are entitled to reasonable attorneys' fees and costs. The matter of attorneys' fees and costs shall be addressed by post-judgment motion.