**In re PERSONAL COMPUTER NETWORK, INC., Debtor.**

**DIRECTIONAL INTERNATIONAL, LTD., Access Microcenters, Inc. and the New Personal Computer Network, Inc., Plaintiffs,**

v.

**ILLINOIS BELL TELEPHONE COMPANY, Defendant.**

Bankruptcy Nos. 87 B 7306, 87 A 1223.

United States Bankruptcy Court, N.D. Illinois, E.D.

May 12, 1988.

Michael R. Enright, of Arvey, Hodes, Costello & Burman, Chicago, Ill., for plaintiffs, Directional Intern., Ltd. et al.

L. Bow Prichett and Ronald E. Cundiff, of Illinois Bell Telephone Co., Chicago, Ill., for defendant, Illinois Bell Telephone Co.

## MEMORANDUM OPINION AND ORDER

JOHN D. SCHWARTZ, Chief Judge.

This matter is before the court on motion of the Illinois Bell Telephone Company ("Bell") to dismiss adversary number 87 A 1223 or in the alternative, for summary judgment. The motion will be denied for reasons set forth herein.

Directional International, Ltd., Access Microcenters, Inc., and the New Personal Computer Network, Inc. ("Plaintiffs") purchased substantially all of the assets of Personal Computer Network ("Debtor") pursuant to an Order of court dated October 30, 1987. An essential element of the transaction was the purchase of all the Debtor's telephone numbers including local, long distance, and Watts lines. The transaction and all supporting documents of sale were approved by this court in its October 30, 1987 Order.[1] On December 23, 1987, the Plaintiffs brought this action when Bell threatened to terminate service of the telephone numbers purchased from the Debtor unless Plaintiffs satisfied the

---

1. The plaintiffs assert, and Bell does not contest, that at least 90% of Debtor's sales before the transaction and Plaintiff's presently, were generated by telephone orders.

pre-petition debt owed to Bell by the Debtor.[2]

The complaint basically seeks an injunction enjoining Bell from disrupting telephone service to the Plaintiffs as respects the numbers previously utilized by the Debtor. From time to time, this court has extended a temporary restraining order enjoining Bell from terminating telephone service.

On February 4, 1988, Bell filed the instant motion alleging, *inter alia*: (i) that the telephone numbers in question were never "property of the estate" and hence the complaint did not constitute a core proceeding pursuant to 28 U.S.C. § 157; and (ii) that even if the complaint is subject to the jurisdiction of this court, it fails to state a claim upon which relief can be granted. The court will address each issue in turn.

In support of Bell's contention that the telephone numbers were never property of the estate, it cites portions of the terms, conditions, and rate structures (commonly referred to as tariffs) which are filed with and approved by the Illinois Commerce Commission pursuant to the Public Utilities Act of Illinois. Ill.Rev.Stat., ch. 111⅔, § 1–101 *et seq.* The tariff provides in pertinent part:

> *The customer has no property right in the telephone number.* The company may change the telephone number of a customer for engineering or technical reasons. *However, it will not change a telephone number as a penalty or to enforce payments to directory advertising charges.*[3] (emphasis added)

Bell would have this court interpret this state regulation in a vacuum. So read, it would be clear that the provider of telephone service reserves the proprietary right in the telephone numbers it issues to its customers for all purposes and under all circumstances. Therefore, a telephone number can never be an asset to anyone other than Bell. However, this case is not as simplistic as Bell would have this court believe.

In two cases strikingly similar to the situation here, the courts have held that as between a telephone company tariff and the federal bankruptcy laws, the federal law controls. These courts have also held that telephone numbers are indeed property of the estate over which the bankruptcy court has summary jurisdiction.

In *In re Fontainebleau Hotel Corp.*, 508 F.2d 1056 (5th Cir.1975), a hotel reorganizing under Chapter X of the Bankruptcy Act of 1898 owed South Central Bell Telephone Company slightly more than $9,000 in unpaid pre-petition debt. The telephone company gave the trustee two alternatives based on procedures contained in its tariff on file with the Louisiana Public Service Commission: (i) pay the entire outstanding pre-petition debt or, (ii) begin new service under a new set of numbers.[4] In either case, the telephone company conditioned service on receipt of a substantial deposit. The district court (sitting in bankruptcy) granted the trustee's motion for an injunction enjoining the telephone company from disconnecting service.

On appeal, the relevant issues were: (i) whether the bankruptcy court had jurisdiction to enter the injunction; and (ii) even if jurisdiction was proper, whether the bankruptcy court erred in granting the injunction in lieu of the authority given to the telephone company pursuant to its own tariff. 508 F.2d at 1058.

Judge Ainsworth, writing for the court, held that the telephone company tariffs,

**2.** Soon after the complaint was filed, the Plaintiffs received a similar threat from AT & T Communications, Inc. This court allowed Plaintiffs to amend its complaint to include AT & T. Prior to the court's ruling on the instant motion, however, Plaintiffs and AT & T reached a settlement and AT & T was dismissed as a party defendant.

**3.** It is arguable that the terms of the tariff itself buttresses Plaintiff's argument. In effect, Bell is

penalizing Plaintiffs by forcing them to choose between paying the pre-petition debt for the existing numbers or subscribing for new numbers, in which case large sums of money expended for advertising would have been for naught.

**4.** As in this case, the hotel in *Fontainebleau* expended substantial sums of money advertising the existing numbers.

which denied any property rights in telephone numbers to its subscribers, had no bearing whatsoever in the bankruptcy context. The court further held that the telephone numbers, just like the hotel's building and furniture, were valuable assets in possession of the debtor and hence property of the estate. According to Judge Ainsworth, because the telephone numbers in question were property of the estate, the bankruptcy court had jurisdiction. 508 F.2d at 1059.

Judge Hubert Will of this District Court has specifically adopted the *Fontainebleau* ruling. In *In re Kassuba*, 396 F.Supp 324 (N.D.Ill 1975), he held that, "Tariffs filed by a utility with a state regulatory agency cannot determine the jurisdiction of a federal bankruptcy court." 396 F.Supp at 326. Judge Will held that the telephone numbers at issue in that case remained property of the estate notwithstanding the tariffs which provided otherwise and that all equitable considerations supported the bankruptcy judge's decision to order continuation of telephone service and deny payment of charges incurred pre-petition.

This court believes the reasoning in *Fontainebleau* and *Kassuba* sound and applicable, particularly in light of the inequitable consequences which would result if Bell would now be permitted to "short circuit" the Bankruptcy Code by relying on its tariff to compel payment of its pre-petition debt or else terminate service to Plaintiffs. The court also agrees that, "A tariff ..., drafted by the company and certain to be self-serving, cannot determine the meaning of 'property' in the federal bankruptcy statute." 508 F.2d at 1059. This court holds that the telephone numbers purchased by Plaintiff in this proceeding were property of the estate within the meaning of 11 U.S.C. § 541 and that this court has jurisdiction as to the disposition of those telephone numbers pursuant to 28 U.S.C. § 157(b)(2)(N).

Moving to the merits of Bell's motion, the court notes that the bankruptcy court is a court of equity. *In re Exquisito Services, Inc.*, 823 F.2d 151 (5th Cir.1987). In this case Plaintiffs purchased what was arguably one of the most important assets of the Debtor, namely its telephone numbers. Bell was fully aware that the Debtor spent hundreds of thousands of dollars advertising those numbers before the purchase and that the Plaintiffs have spent over $150,000 advertising the same numbers for its business. Bell's attempt to hold the transfer of these numbers hostage while looking to its tariff for authority for payment of a pre-petition debt is unfounded in law and inequitable in result.

In effect, Bell would have this court sanction blackmail at its worse or priority over other creditors at its best by allowing Bell to recover a pre-petition unsecured claim in this manner. The very purpose of the bankruptcy laws is to suspend the *status quo* of the rights and obligations between the debtor and its creditors. As Judge Ainsworth stated, "If a creditor, like the telephone company, could continue to enforce his state law rights after initiation of bankruptcy proceedings, the bankruptcy laws would be meaningless." 508 F.2d at 1059. This court agrees.

NOW THEREFORE IT IS ORDERED (i) that the motion of Illinois Bell to dismiss adversary complaint number 87 A 1223 or in the alternative for summary judgement is denied in its entirety; (ii) that Illinois Bell is enjoined from discontinuing service to Plaintiffs based on non-payment of the Debtor's pre-petition debt until further order of this court; (iii) Illinois Bell is directed to file its answer to the complaint within thirty (30) days and; (iv) this proceeding is set for status on June 16, 1988 at 10:30 a.m.