**HOWARD OAKS, INC.**

v.

**MARYLAND NATIONAL BANK,
MNC Financial, Inc.**

Civ. No. S 92–3331.

United States District Court,
D. Maryland.

Jan. 13, 1993.

Murray L. Deutchman, Rockville, MD, for plaintiff.

Clifford C. Whitney, III, J. Preston Turner, Maryland Nat. Bank, Office of Sp. Assets Counsel, Baltimore, MD, for defendant.

## MEMORANDUM OPINION

SMALKIN, District Judge:

This is a case removed to this Court on the basis of two federal claims pleaded in the plaintiff's state court complaint, filed originally in the Circuit Court for Baltimore City, Maryland. That complaint followed the plaintiff's unsuccessful attempt, in the Circuit Court for Baltimore County, to vacate a confessed judgment in the amount of some $8,000,000.00 entered against it at the behest of Maryland National Bank (MNB), in consequence of defaulted loans. Judge Levitz of the Baltimore County court held that Howard Oaks, in the 33 page affidavit of its sole shareholder and CEO, Mr. Miller, had failed to show the existence of any meritorious defense. Howard Oaks immediately maneuvered to stave off the effect of the judgment by appealing it (and Judge Levitz's order denying the motion to vacate) to the Court of Special Appeals of Maryland. Howard Oaks took other steps, as well, to prevent Maryland National from collecting on its judgment, including the filing of a Suggestion of Bankruptcy with the Court of Special Appeals, which resulted in a stay, issued by that Court, of the appeal pending further order of the Bankruptcy Court. A few months later, while Maryland National was precluded from enforcing its judgment by Howard Oaks' defen-

sive maneuvers, Howard Oaks seized the offensive by suing Maryland National Bank and its parent, Maryland National Financial, in the Baltimore City suit, making a number of claims typical of "lender malpractice" suits. Indeed, the very filing of such a suit, in which the borrower essentially blames the lender for its business failure, might remind the lay observer of Danton's famous exhortation to the Legislative Assembly, "Il nous faut de l'audace, encore de l'audace, toujours de l'audace," *see Bartlett's Familiar Quotations* (15th ed. 1980) at 412 n. 1, but the fact is that the Court of Special Appeals of Maryland has labelled the proliferation of such suits a "growth industry." *Parker v. Columbia Bank,* 91 Md.App. 346, 351, 604 A.2d 521, *cert. denied,* 327 Md. 524, 610 A.2d 796 (1992).

Presently, the suit is pending on the defendants' motion to dismiss, which has been briefed. Although the Court warned counsel that the present motion would be treated as a motion for summary judgment because it was accompanied by materials outside the pleading, the Court has, in the event, treated it as a motion to dismiss under Rule 12(b)(6), by confining its analysis to the legal sufficiency of the allegations of the complaint. No oral hearing on the motion is needed. Local Rule 105.6, D.Md.

The motion to dismiss will be granted for the reasons set forth below. Keeping in mind that the Court must take the allegations of the complaint as true, it still must be dismissed if it fails to allege essential elements of the claims asserted or is otherwise not maintainable as a matter of law.

First, the Court agrees that the complaint alleges no cognizable claims against MNC Financial, nor does it allege any conduct that would justify piercing the corporate veil between MNB and MNC Financial under settled principles of law. *Cf. Call Carl, Inc. v. BP Oil Corp.,* 391 F.Supp. 367, 371 (D.Md.1975), *aff'd. in part and rev'd. in part on other grounds,* 554 F.2d 623 (4th Cir.), *cert. denied,* 434 U.S. 923, 98 S.Ct. 400, 54 L.Ed.2d 280 (1977). In that the complaint fails to state any meritorious

claim, though, this question is rather academic.

■ The Court begins its analysis of defendants' first issue, *res judicata,* by noting that, although it is on appeal, the judgment rendered in Baltimore County is entitled in this Court to receive full faith and credit, *i.e.,* the same preclusive effect as it would be given in a state court of Maryland. Confessed judgments are judgments on the merits, entitled to preclusive effect under Maryland law, *see Boyce v. Plitt,* 274 Md. 333, 335–36, 335 A.2d 101 (1975), and the fact that an appeal is lodged does not necessarily disturb the finality of the judgment.

■ The finality of the Baltimore County judgment, however, does not, under Maryland law, preclude the plaintiff from maintaining this action. In *Rowland v. Harrison,* 320 Md. 223, 577 A.2d 51 (1990), the Court of Appeals noted that, because Maryland does not have a compulsory counterclaim rule, a matter that could be raised either as a defense or as an affirmative claim for relief is not barred by *res judicata* simply because it was not raised in a prior proceeding between the parties. To bar the action, it must have been *actually litigated,* in which case it is the principle of collateral estoppel, not *res judicata,* that bars the claim. 320 Md. at 236 n. 5, 577 A.2d 51. It is clear that none of plaintiff's claims was actually litigated in the Baltimore County proceeding.

This, however, is cold comfort to the plaintiff, because its allegations do not state facially meritorious claims under the governing law.

■ Count I is defective because it does not contend that the written credit agreement between the parties was breached (except perhaps in a way asserted in other counts that will be dealt with below, such as the alleged breach of the duty of good faith). Rather, it contends that there were assurances, oral and written, beyond the face of the loan documents, that bound MNB to continue to fund Howard Oaks. Lender malpractice suits based on such "side agreements" are precisely the sort of

mischief that the Maryland legislature intended to curtail by enactment of Md.Cts. & Jud.Proc.Code Ann. § 5-317 (1989 repl. vol.), which clearly bars the claim attempted to be asserted in Count One.

■ Even if not barred by that statute, Count I, alleging breach of a stated intent to make further loans, would merely amount to a claim that defendant breached an intention to enter into a further loan agreement in the future, which is not actionable under Maryland law. *See Phoenix Mutual Life Ins. Co. v. Shady Grove Plaza Ltd. Partnership,* 734 F.Supp. 1181, 1186 (D.Md.1990), *aff'd. table,* 937 F.2d 603 (4th Cir.1991).

■ Count II also fails on the face of the complaint, because the complaint itself establishes the plaintiff as a sophisticated creation of a sophisticated businessman, whose reliance on the alleged fraudulent inducements of MNB was unreasonable as a matter of Maryland law, given the parties' relationship and the loan contracts actually executed between them (according to the complaint itself), which stated finite loan limits. *See Phoenix Mutual, supra,* 734 F.Supp. at 1192. *See also, Foremost Guar. Corp. v. Meritor Sav. Bank,* 910 F.2d 118, 123-26 (4th Cir.1990). Although reasonableness of reliance is sometimes a question of fact that should await trial or summary judgment, this case is unusual in that the complaint itself shows the level of Miller's sophistication, as well as the sophistication of the deal as a whole. Thus, a motion to dismiss, based on the allegations of the complaint, is in order, and the issue need not await a motion for summary judgment.

The Court notes that, in its opposition, plaintiff has offered to dismiss Counts III and IV, but that offer was not to dismiss them with prejudice. In that there is other litigation between the parties in state court involving these claims (at least potentially), the interests of judicial economy indicate that this Court should address whether the claims have legal merit or not, rather than simply accept their voluntary dismissal.

■ As to Count III, the undersigned disagrees with the decision of Senior Judge Murray in *Quality Automotive Co. v. Signet Bank/Maryland,* 775 F.Supp. 849 (D.Md.1991), which recognized a Maryland tort cause of action for breach of the duty of good faith in commercial dealings, arising from § 1-203 of the Uniform Commercial Code (U.C.C.). First, the U.C.C. should not be looked to as a source for tort duties or causes of action by implication; it was clearly intended only to give form to the commercial law of contract, not to be a source of tort law. Second, the Court is convinced that the authority relied upon by Judge Murray is unsound and would not be accepted by the Court of Appeals of Maryland. *See Wilson v. Ford Motor Co.,* 656 F.2d 960 (4th Cir.1981). Rather, this Court holds that, under the U.C.C. as well as the general law of Maryland, there is no independent duty of good faith in commercial dealing enforceable by an action *ex delicto.* Under U.C.C. § 1-203, the duty of good faith is an accompaniment to the exercise of contractual rights and the performance of contractual duties; unless the contract itself obligates a party to perform a certain duty, no independent duty of good faith compels it to do so. *See Parker v. Columbia Bank, supra,* 91 Md.App. at 366, 604 A.2d 521. *Cf. Republic Ins. Co. v. Board of County Comm'rs,* 68 Md.App. 428, 432, 511 A.2d 1136 (1986) (no tort remedy of "bad faith" for failure to perform contract duty). The Court also holds that Count IV, to the extent that it asserts a tort claim for "bad faith" outside the U.C.C., is expressly barred by Maryland law. *Republic Insurance Co., supra,* at 432, 511 A.2d 1136.

■ Next, the Court is of the opinion that Count V is also barred. Maryland does not recognize a cause of action for negligent breach of contract, *see Heckrotte v. Riddle,* 224 Md. 591, 595-96, 168 A.2d 879 (1960), and this complaint utterly fails to allege a claim under the "negligent processing" rule in *Jacques v. First National Bank of Maryland,* 307 Md. 527, 515 A.2d 756 (1986), in that there is no allegation here of extraordinary circumstances (such as those in *Jacques* involving purchase of a personal residence). Rather, this was

merely a commercial financing arrangement between a bank and its sophisticated business customer, in which no *Jacques* duty inhered. *See e.g., G & M Oil Co. v. Glenfed Financial Corp.*, 782 F.Supp. 1085, 1089 (D.Md.1991); *Flow Ind., Inc. v. Fields Constr. Co.*, 683 F.Supp. 527, 530 (D.Md.1988).

■ Count VI, claiming for breach of fiduciary duty, is also meritless. The complaint fails to allege the degree of "take-over" that warrants imposition of a fiduciary duty on a lender either under Maryland's interpretation of her own law, *see Parker v. Columbia Bank, supra,* 91 Md. App. at 369–70, 604 A.2d 521, or under the Fourth Circuit's interpretation of the general law in the field, *see NCNB v. National Bank v. Tiller,* 814 F.2d 931, 936 (4th Cir. 1987), *overruled on other grounds,* 896 F.2d 833, 841 n. 8 (4th Cir.1990). Here, the complaint simply alleges measures taken by MNB to help keep the debtor afloat and to protect its own interests. The law does not require the lender to refrain from such exercise of prudence at the risk of becoming a fiduciary "big brother" to its customer. *See, e.g., James E. McFadden, Inc. v. Baltimore Contractors, Inc.,* 609 F.Supp. 1102 (E.D.Pa.1985).

■ Count VII, in which the plaintiff attempts to assert a claim for violation of the Equal Credit Opportunity Act, 15 U.S.C. § 1691(d)(1) (ECOA), also fails, because plaintiff has not alleged a necessary predicate for such liability, *viz.,* its submission of a "completed application" under 12 C.F.R. § 202.1(f). In its opposition, plaintiff admits never having submitted a "formal application," but argues that the defendant bank was supplied with "additional information in the forms of letters and documents." Under the plain language of the regulation, ECOA liability cannot rest upon anything but a "completed application," and Count VII does not state that a "completed application" was ever submitted. Of course, the complaint here, filed as it was in state court, was not subject to Fed.R.Civ.P. 11 when filed, *see* Fed. R.Civ.P. 81(c), but the Court is quite sure that, mindful of Maryland Rule 1–311(b),

the plaintiff would not have alleged that it had submitted a "completed application" unless it had, beforehand, undertaken a factual and legal review to assure itself that what it submitted in fact had amounted to Maryland National's requirement for a "completed application" as defined in the pertinent regulation. Plaintiff did not so allege. Certainly, in any attempt to amend at this juncture, the strictures of Federal Civil Rule 11 would clearly require that the appropriate legal and factual investigation be carried out before the amendment could be made. But, as it stands, Count VII is fatally defective, as it was in the state court when filed.

■ Count VIII, the RICO claim, is facially defective under settled law of this Circuit, primarily for its failure to show the requisite pattern and continuity for a RICO claim in this Circuit. *See Menasco, Inc. v. Wasserman,* 886 F.2d 681 (4th Cir.1989). This case involves but one alleged wrongdoer, but one alleged victim, but one transaction, and, most of all, no racketeering enterprise. *See, e.g., Benard v. Hoff,* 727 F.Supp. 211, 214 (D.Md.1989); *United States v. Tillett,* 763 F.2d 628, 631 (4th Cir.1985). Thus, although plaintiff has indicated a willingness voluntarily to dismiss Count VIII, the Court will dismiss it under Rule 12(b)(6) for failure to state a claim.

In short, despite the prolix accusations of the complaint, it only can be reasonably read as showing: that the plaintiff, a commercial venture run by a sophisticated businessman, was lent money by the defendant MNB; that money was not enough—in the plaintiff's opinion—to fund its ventures; that the defendant MNB watched out for its own commercial interests by monitoring the plaintiff and suggesting fiscal improvements; and that the plaintiff's ventures failed. This is precisely the kind of meritless dispute between lender and defaulting commercial borrower that the courts, in the cases cited hereinabove and a legion of others, have been quick to put to rest, as this Court will do here.

For the reasons stated, an order will be entered separately, granting the defendants' motion, and dismissing all counts of

the complaint for failure to state a claim upon which relief can be granted. Fed. R.Civ.P. 12(b)(6).

## ORDER

For the reasons stated in a Memorandum Opinion entered this date, it is, by the Court, this 13th day of January, 1993, ORDERED:

1.  That the defendants' motion to dismiss BE, and it hereby IS, GRANTED;

2.  That the complaint herein BE, and it hereby IS, DISMISSED, for failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6);  and

3.  That the Clerk mail copies hereof to counsel.