| DATE OF INVOICE (PAYMENT OR SHIPMENT) | AMOUNT DEBTOR PAID WITHIN 90 DAYS | AMOUNT OF SHIPMENTS WITHIN 90 DAYS |
|---|---|---|
| 1/30/91 | $ 811.85 | |
| 1/30/91 | 273.46 | |
| 1/30/91 | 4,049.40 | |
| 1/30/91 | 800.00 | |
| 1/30/91 | 575.00 | |
| 1/30/91 | 11,292.00 | |
| 1/31/91 | | $ 12,546.00 |
| 2/4/91 | | 13,284.00 |
| 2/13/91 | | 4,551.00 |
| 2/21/91 | 8,856.00 | |
| 2/21/91 | 10,380.00 | |
| 2/21/91 | 8,118.00 | |
| 2/21/91 | 6,888.00 | |
| 3/25/91 | 3,700.00 | |
| 3/25/91 | 8,821.44 | |
| 3/25/91 | 390.00 | |
| 3/25/91 | 1,943.00 | |
| 3/25/91 | 495.00 | |
| 3/25/91 | 7,380.00 | |
| 3/25/91 | 13,284.00 | |
| 3/25/91 | 1,440.00 | |
| 3/25/91 | 12,546.00 | |
| 3/25/91 | 2,096.64 | |
| 4/8/91 | 606.25 | |
| 4/8/91 | 7,134.00 | |
| 4/8/91 | 5,950.15 | |
| 4/8/91 | 2,037.75 | |
| 4/8/91 | 7,380.00 | |
| 4/8/91 | 1,565.70 | |
| 4/8/91 | 1,872.70 | |
| 4/8/91 | 2,468.65 | |
| 4/8/91 | 12,546.00 | |
| | $145,700.99 | |

**In re CONNECTICUT PIZZA, INC., Debtor.**

**CONNECTICUT PIZZA, INC., Plaintiff,**

**v.**

**BELL ATLANTIC–WASHINGTON, D.C., INC., Defendant.**

**Bankruptcy No. 92–1–6259–DK.**
**Adv. No. 94–1–A842–DK.**

United States Bankruptcy Court, D. Maryland.

Feb. 28, 1996.

Marcia K. Docter, Washington, DC, for plaintiff.

T. Jay Barrymore, Washington, DC, for defendant.

*MEMORANDUM OPINION*

DUNCAN W. KEIR, Bankruptcy Judge.

In this adversary proceeding, Connecticut Pizza, Incorporated, d/b/a Connecticut Pizza, Inc. ("Plaintiff") [1] brought an action seeking damages from Bell Atlantic–Washington, D.C., Inc. ("Bell Atlantic" or "Defendant"). The Defendant has filed a Motion for Summary Judgment seeking judgment on all counts. The Plaintiff has filed a Motion for Partial Summary Judgment, seeking a judgment of liability against the Defendant with damages to be determined at an evidentiary trial.

A hearing on the motions for summary judgment was held on December 7, 1995. In its complaint the Plaintiff seeks a finding of liability and determination of damages on four separate causes of action: (1) breach of contract, (2) negligence, (3) willful violation of 11 U.S.C. § 362(a) pursuant to 11 U.S.C. § 362(h), and (4) violation of 11 U.S.C. § 366. At the December 7, 1995 hearing, the plaintiff stipulated that it was withdrawing its cause of action asserted for violation of 11 U.S.C. § 366.

Although each side in its submissions has presented a different characterization of the facts in this case and has argued different conclusions which the court should draw from those facts, there is little dispute as to actual facts and no dispute of material facts relevant to the determination of the causes of action which remain. Accordingly, the court shall determine all remaining disputes in this adversary proceeding upon the cross-motions for summary judgment.

Under Rule 56 of the Federal Rules of Civil Procedure, made applicable to bankruptcy cases by Rule 7056 of the Federal Rules of Bankruptcy Procedure, summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Lujan v. National Wildlife Federation,* 497 U.S. 871, 883–84, 110 S.Ct. 3177, 3186, 111 L.Ed.2d 695 (1990); *Sylvia Dev. Corp. v.*

*Calvert County, Maryland,* 48 F.3d 810, 817 (4th Cir.1995). In considering a motion for summary judgment the court must view all permissible inferences in a light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Tuck v. Henkel Corp.,* 973 F.2d 371, 374 (4th Cir.1992), *cert. denied,* 507 U.S. 918, 113 S.Ct. 1276, 122 L.Ed.2d 671 (1993). Summary judgment is appropriate only if, taking the record as a whole, a reasonable jury could not possibly return a verdict in favor of the non-moving party. *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). It is with these principles in mind that the court will consider the cross-motions for summary judgment.

At the December 7, 1995 hearing on the motions for summary judgment and in response to questions posed by the court, both parties stipulated to a number of facts that are material to the determination of this dispute. The litigants could not stipulate and agree to various additional non-material facts, either because the parties lacked knowledge of the facts or because one of the parties disputed the characterization contained in an averment made by the other. Accordingly, the court shall consider only the following stipulated material facts in ruling on the cross-motions for summary judgment.

A. *Stipulated Material Facts.*

Prior to April of 1992, Christopher and Patricia Kefalas, then husband and wife, were the shareholders and officers of three separate corporations: SLC, Inc. ("SLC"), Fairfax Maggies, Inc. and the Plaintiff herein, Connecticut Pizza, Inc. Christopher Kefalas was president and Patricia Kefalas was vice president of these corporations. At all times relevant to the dispute in this adversary proceeding, Christopher Kefalas remained president of the Plaintiff.

---

**1.** The Plaintiff and Debtor herein filed a petition in bankruptcy and the complaint instituting this adversary proceeding under the name of Connecticut Avenue, Inc. The Debtor has since filed an amended petition correcting the name listed on the petition to Connecticut Pizza, Inc., and has filed an amended complaint in this adversary proceeding likewise correcting the name of the Plaintiff.

The Plaintiff herein maintained a pizza delivery establishment at 4483 Connecticut Avenue, N.W., Washington, D.C. SLC maintained a conventional "sit-down" restaurant at 7237 Wisconsin Avenue, N.W., Washington, D.C. The SLC operation did not offer pizza delivery service. The Plaintiff was the listed holder of a phone number which was used by its customers to order pizza. This telephone number is the crux of the dispute between Bell Atlantic and the Plaintiff.

In connection with a domestic dispute between Christopher and Patricia Kefalas, the Circuit Court for Montgomery County, Maryland entered certain orders approving an agreement between the parties with respect to the management and operation of the jointly owned companies. Specifically, a Consent Order dated April 18, 1992 provides in relevant part:

> [T]hat until May 8, 1992, the plaintiff [Patricia Kefalas] shall manage and operate the parties' jointly owned businesses, including the receipt and disbursement of all monies, and shall attempt to make arrangement [sic] with business creditors to solve some of the financial problems; and it is further,
>
> ORDERED, that the defendant [Christopher Kefalas] shall have access to the parties' jointly owned businesses and assets during normal business hours one time per day, provided he shall not interfere in plaintiff's operation of the business or withdraw any money....

Memorandum of Points and Authorities in Support of Plaintiff's Motion for Summary Judgment, Paper No. 49, at Exhibit L. On May 7, 1992, the Circuit Court entered a second order extending the April 18, 1992 order in full force and effect until further order of the court. *Id.* Shortly after the entry of the orders by the Circuit Court, Patricia Kefalas, acting for the three corporations, engaged Ronald Goldberg, Esquire, as counsel. Goldberg drafted petitions in bankruptcy and initiated Chapter 11 cases for each corporation.

After the petition in bankruptcy was filed by the Plaintiff, this court entered an order granting relief from the automatic stay in favor of G.E. Capital, a secured creditor. G.E. Capital subsequently sold the equipment necessary for the Plaintiff to maintain its pizza operation. In addition, the lease under which the Plaintiff occupied the premises at 4483 Connecticut Avenue, N.W. was terminated.

On or about June 1, 1993, Patricia Kefalas telephoned Bell Atlantic and instructed the company to transfer the location of the telephone number listed for the Plaintiff to the 7237 Wisconsin Avenue, N.W. location of the restaurant owned and operated by SLC. The Plaintiff avers that the purpose of transferring the telephone number was to move its pizza delivery business from the Connecticut Avenue location to the Wisconsin Avenue premises occupied by SLC, where the Plaintiff's business would be maintained as a semi-autonomous operation. The Plaintiff concedes, however, that no formal documentation reflecting these proposed arrangements between SLC and the Plaintiff was prepared.[2]

Upon receiving the request of Patricia Kefalas, the customer service unit of Bell Atlantic prepared a work order for the transfer of the phone number. Within 10 days of that request and before the work order was executed, Bell Atlantic received a telephone call from Christopher Kefalas, who identified himself as the president of the Plaintiff. Christopher Kefalas informed Bell Atlantic that the phone number was not to be transferred without his authorization. Christopher Kefalas was also the person who had originally set up the phone number and account at Bell Atlantic on behalf of the Plaintiff.

As a result of Christopher Kefalas' phone call, Bell Atlantic canceled the work order, issued a work order code to Christopher Kefalas, and entered a computer instruction that further work orders would only be honored if requested by a person in possession of that code. Bell Atlantic then promptly

---

**2.** Defendant does not concede that the pizza delivery business to be moved to the Wisconsin Avenue location was to be operated as an independent business maintained by the Plaintiff. This dispute is not material to the determination of the remaining causes of action.

notified Patricia Kefalas of the canceled work order and the circumstances surrounding the cancellation. Patricia Kefalas and Ronald Goldberg, on behalf of the Plaintiff, immediately contacted Bell Atlantic and advised that Plaintiff was a debtor-in-possession in the bankruptcy case, that Patricia Kefalas was Plaintiff's authorized representative, and that Bell Atlantic was required to comply with her request that the telephone number be transferred to the Wisconsin Avenue location. Bell Atlantic was also provided with copies of the orders of the Circuit Court for Montgomery County, as well as a copy of Plaintiff's bankruptcy petition which identified Mr. Goldberg as counsel for the debtor-in-possession and contained an address for the Plaintiff in care of Patricia Kefalas.

At the time of these communications, Bell Atlantic maintained a separate bankruptcy unit to deal with customers that had filed petitions in bankruptcy. This unit maintained special bankruptcy account billing procedures designed to ensure that collection efforts and other actions taken with respect to an account held by a customer who had filed bankruptcy did not violate the provisions of the Bankruptcy Code. At a deposition taken in this adversary proceeding it was revealed that the bankruptcy unit was in possession of a copy of the motion for relief from stay filed by G.E. Capitol. Attached to this motion was a certificate of service upon, *inter alia,* Patricia Kefalas as debtor's "designated representative". Bell Atlantic's bankruptcy unit had been in contact with Mr. Goldberg in arranging the required deposit for continuing service under section 366 of the Bankruptcy Code.[3] The deposit required for continuing service under 11 U.S.C. § 366 was paid by a check drawn upon an account jointly titled in the name of all three corpora-

tions and signed by Patricia Kefalas. Moreover, Bell Atlantic's bankruptcy unit generated and filed a proof of claim in the Plaintiff's bankruptcy case, a copy of which was mailed to Mr. Goldberg. Bell Atlantic at no time sought to collect the pre-petition accounts of the Plaintiff. The customer service unit which received the request and protest over the relocation of the phone number did not consult with the bankruptcy unit concerning the conflicting instructions as to the transfer of the number.

After receiving the second round of communications from Patricia Kefalas and Mr. Goldberg instructing Bell Atlantic to transfer the phone number notwithstanding the protest of Christopher Kefalas, Bell Atlantic contacted Christopher Kefalas. Christopher Kefalas' bankruptcy attorney, Gary Welton, Esquire, advised Bell Atlantic that the Plaintiff's request to transfer the telephone number was an attempt to transfer an asset out of the Plaintiff's bankruptcy estate to the separate entity of SLC in violation of the Bankruptcy Code. Bell Atlantic was similarly advised that the telephone number could not be lawfully transferred without a court order approving such transfer. In light of these conflicting instructions by the respective counsel for the parties seeking and opposing the transfer of the phone number, Bell Atlantic informed both parties that it would not transfer the phone number absent a court order ascertaining the rights of the parties or authorizing the transfer.

On June 25, 1993, the Plaintiff by its counsel Mr. Goldberg filed a motion[4] for an order to show cause why Christopher Kefalas should not be held in contempt for interfering with and preventing the transfer of the telephone number. In the motion the Plaintiff averred that Christopher Kefalas' actions constituted a wilful violation of the automatic

---

**3.** Section 366 provides:

(a) Except as provided in subsection (b) of this section, a utility may not alter, refuse, or discontinue service to, or discriminate against, the trustee or the debtor solely on the basis of the commencement of a case under this title or that a debt owed by the debtor to such utility for service rendered before the order for relief was not paid when due.

(b) Such utility may alter, refuse, or discontinue service if neither the trustee nor the debtor, within 20 days after the date of the order for

relief, furnishes adequate assurance of payment, in the form of a deposit or other security, for service after such date. On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment.
11 U.S.C. § 366.

**4.** This motion is found in the case *In re Connecticut Pizza, Inc.,* No. 92–1–6259–SD, at paper number 111.

stay pursuant to 11 U.S.C. § 362. Significantly, the motion did not name or otherwise seek relief vis a' vis Bell Atlantic. An order to show cause was entered on July 1, 1993, and Christopher Kefalas filed a memorandum in response on July 16, 1993. On January 6, 1994, the Debtor by its attorney Charles Doctor filed a line withdrawing with prejudice the motion for show cause order filed against Christopher Kefalas. The file does not reflect the reason for the withdrawal. No reference was made in any of these pleadings naming Bell Atlantic as a party. In fact, prior to the initiation of this adversary proceeding against Bell Atlantic on October 11, 1994, there is no indication of any assertion of liability against Bell Atlantic by the Plaintiff.

The telephone number was never transferred in accordance with the request and was eventually discontinued, either at the Plaintiff's instruction or because of non-payment of the post-petition account. Finally, the Plaintiff stipulated that the maximum allowed damages under the published tariff for breach of contract would be $50.00.

### B. Conclusions of Law.

#### 1. Count I: Negligence.

■ As set forth on the record at the hearing on the motion for summary judgment and as further detailed in this Memorandum Opinion, summary judgment shall be granted in favor of Bell Atlantic on the negligence count. It is not entirely clear whether, under Maryland law,[5] an independent cause of action *ex delicto* exists for the breach of a duty which arises solely as the result of a contract between the parties. The last clear pronouncement by the Court of Appeals of Maryland on this issue appears in the case of *Heckrotte v. Riddle*, 224 Md. 591, 168 A.2d 879 (1961), in which the court stated:

> The mere negligent breach of a contract, absent a deed or obligation imposed by law independent of that arising out of the contract itself, is not enough to sustain an action sounding in tort.

224 Md. at 595, 168 A.2d at 882. The distinction between causes of action *ex delicto* and *ex contracto* enunciated in the *Heckrotte* decision has been relied upon by the United States District Court for the District of Maryland in the cases of *Martin Marietta Corp. v. International Telecommunications Satellite Organization (INTELSAT)*, 763 F.Supp. 1327, 1330 (D.Md.1991), *aff'd in part and rev'd in part*, 991 F.2d 94 (4th Cir.1992), and *Howard Oaks, Inc. v. Maryland Nat'l Bank*, 810 F.Supp. 674, 677 (D.Md.1993).

---

5. Both parties have assumed that Maryland law governs the issues presented and have cited this court to decisions concerning application of Maryland law. However, it appears that both the Plaintiff and Bell Atlantic were situated in the District of Columbia at the time of the events, that the customer relationship existed in the District of Columbia, and that all of the business of the Plaintiff was conducted in the District of Columbia. The original petition in the main bankruptcy case was filed by Connecticut Avenue, Inc., which purported to be a Maryland corporation. The amended petition discloses the name of the Debtor as Connecticut Pizza, Inc., a corporation formed under the laws of the District of Columbia. As it is now evident that the Debtor was incorporated under the laws of the District of Columbia, where it operated its sole business location and held all of its assets, it appears that the Debtor's petition was filed in the wrong venue. 28 U.S.C. § 1408. Nonetheless, this court will not now transfer this case and this adversary proceeding which has been so long pending, as it would work to the inconvenience of all parties and against judicial efficiency.

Because the parties have not argued to the contrary, the court will apply Maryland law.

In any event, it appears that the court's determination of the negligence count of Plaintiff's complaint would be the same under District of Columbia law. *See Prouty v. National R.R. Passenger Corp.*, 572 F.Supp. 200, 206 (D.D.C. 1983); *Towers Tenant Assoc., Inc. v. Towers Ltd. Partnership*, 563 F.Supp. 566, 569 (D.D.C.1983). In *Towers*, the United States District Court for the District of Columbia determined that "[t]he omission to perform a contractual obligation does not ordinarily create a cause of action in tort as between the contracting parties.... Rather, an action for breach of contract is recognized as the appropriate avenue of relief." *Towers*, 563 F.Supp. at 570. The court also quoted from the Maryland Court of Appeals' decision in *Heckrotte v. Riddle*, discussed at page 11 of this memorandum opinion. *Id.* Furthermore, it is long established that in the absence of contrary authority within the law of the District of Columbia, "Maryland, the source of the District's common law [is] an especially persuasive authority when the District's common law is silent." *Cheatle v. Cheatle*, 662 A.2d. 1362, 1365 (D.C.App.1995) (quoting *Napoleon v. Heard*, 455 A.2d 901, 903 (D.C.1983)).

The Maryland Court of Special Appeals, however, citing *Jacques v. First Nat'l Bank of Md.,* 307 Md. 527, 515 A.2d 756 (1986), has stated that a cause of action *ex delicto* may arise from the breach of a duty imposed by contract. *Waller v. Maryland Nat'l Bank,* 95 Md.App. 197, 620 A.2d 381, 396 (1993), *vacated,* 332 Md. 375, 631 A.2d 447 (1993) (vacating judgment of the Court of Special Appeals because there was no final judgment by the trial court). The statement of the Court of Special Appeals in *Waller* is *dicta,* and appears to be much broader then the Court of Appeals pronouncement in *Jacques, supra.* Moreover, in the *Waller* case the court found that no negligence had occurred. It was therefore not necessary for the Court of Special Appeals to determine whether, under appropriate facts, a cause of action *ex delicto* could exist.

In *Jacques, supra,* the Court of Appeals found that the plaintiff could proceed in a cause of action for negligence where a bank had accepted an application for a loan and a fee paid for the processing of that application. The processing was negligently accomplished. As the relationship between the applicant and bank arose solely by virtue of contract, it would appear that the Court of Appeals softened the absolute prohibition against causes of action being asserted *ex delicto* for breaches of duty arising from a contract, as set forth in *Heckrotte, supra.* However, the Court of Appeals gave little guidance as to what special circumstances are required in order for a tort action to be maintainable upon a duty which would not exist but for the contract between the parties.[6] The United States District Court for the District of Maryland has opined that in the absence of extraordinary circumstances, such as the those in the *Jacques* case concerning the purchase of a personal residence, Maryland does not recognize a cause of action for negligent breach of contract. *Howard Oaks, Inc.,* 810 F.Supp. at 677; *see also Martin Marietta,* 763 F.Supp. at 1330 ("[T]he fundamental distinction between tort and contract remains intact.") (quoting *21st*

*Century Properties v. Carpenter Insulation,* 694 F.Supp. 148, 151 (D.Md.1988)).

▊▊▊ It may well be that such special circumstance would exist between parties situated as are the litigants before this court. Bell Atlantic is a regulated public telephone company having a monopoly over local telephone service in this region. Although it may be said that parties obtain a right to performance of services by Bell Atlantic solely by reason of their becoming customers pursuant to a contract with Bell Atlantic, the unique position of Bell Atlantic and similarly situated companies may well impose a broad duty upon Bell Atlantic to act in a prudent manner and with a reasonable duty of care in the operation of the communications network it controls. Nonetheless, to the extent that such a duty exists and could be sued upon in tort if violated, Bell Atlantic would be expected to exercise the degree of care that a person of ordinary judgment would exercise under like circumstances. *State v. Baltimore Contracting Co.,* 177 Md. 1, 6 A.2d 625, 633–34 (1939). The standard to be applied to an action *ex delicto* is not whether or not the contracted-for performance was accomplished, but whether the party charged with the duty of accomplishing such performance failed to exercise the standard of care applicable under the circumstances and by such failure was negligent. Under the facts stipulated to by the parties in this adversary proceeding, this court finds that no reasonable trier of fact could conclude that Bell Atlantic failed to exercise reasonable care.

Bell Atlantic promptly responded to each demand made by Patricia and Christopher Kefalas and their attorneys and promptly informed both sides of the conflicting communications it had received. Bell Atlantic was faced with the request for the transfer of the phone number; a demand by Christopher Kefalas, the president of the Plaintiff, that the number not be transferred; argument by counsel for the Plaintiff that the debtor-in-possession had the right to the phone number and a right to transfer it; and arguments by counsel for Christopher Kefa-

---

**6.** One decision has been located which indicates that the District of Columbia would follow the *Jacques* exception to the *Heckrotte* rule. *See*

*High v. McLean Fin. Corp.,* 659 F.Supp. 1561, 1570 (D.D.C.1987).

las that absent court approval the transfer would be an illegal action by a debtor-in-possession. In response to these conflicting instructions, Bell Atlantic informed the parties that it would not act and thus would preserve the status quo pending receipt of a court order defining the rights of the parties in light of the bankruptcy case and with respect to the transfer of the number. The failure of Bell Atlantic's customer service unit to communicate with its bankruptcy unit regarding the conflicting instructions does not render its refusal to transfer the telephone number any less reasonable. Faced with the conflicting assertions made by the sole officers and shareholders of the Plaintiff, Bell Atlantic's insistence on a court order authorizing the requested transfer was reasonable under the circumstances.

A debtor-in-possession seeking to transfer a telephone number and faced with this series of events could immediately turn to the bankruptcy court for relief under 11 U.S.C. § 362. In fact; this is exactly what Plaintiff did. Plaintiff moved in this court for an order finding Christopher Kefalas in contempt. The motion did not seek relief against Bell Atlantic, and, for that matter, did not even name Bell Atlantic as a party to the alleged violation of the automatic stay. Then, for reasons known only to the Plaintiff, the contempt motion was eventually withdrawn with prejudice.

It is simply unreasonable for the Plaintiff to exclude Bell Atlantic in its motion seeking a determination as to its right to transfer the phone number, dismiss its action with prejudice against the only respondent named, and then two years later institute a suit for money damages against Bell Atlantic asserting that the failure to transfer the number had somehow cost the Plaintiff's failing business significant revenues over the ensuing two year period. At the very least, this pattern of activity rises to contributory negligence, which would bar a recovery by the Plaintiff on its cause of action in tort. *Wegad v. Howard Street Jewelers,* 326 Md. 409, 417, 605 A.2d 123, 127 (1992) ("The focus of the contributory negligence defense is whether the plaintiff took appropriate precautions to protect his own interests."); *see also Ramos*

*v. Southern Maryland Elec. Coop., Inc.,* 996 F.2d 52, 55 (4th Cir.1993); *Harrison v. Montgomery County Bd. of Educ.,* 295 Md. 442, 451, 456 A.2d 894, 898 (1993) (under Maryland law, contributory negligence is a complete bar to recovery). For these reasons, summary judgment as to Count I of the complaint alleging a cause of action in negligence is hereby granted in favor of Bell Atlantic and against Plaintiff.

### 2. *Count II: Breach of Contract.*

■ On the cause of action for breach of contract, this court reaches the opposite conclusion and finds that on the facts of this case, Bell Atlantic breached its contract with the debtor. "A breach of contract is a failure without legal excuse to perform any promise which forms the whole or part of a contract...." *Weiss v. Sheet Metal Fabricators, Inc.,* 206 Md. 195, 110 A.2d 671, 675 (1955) (quoting *Friedman v. Katzner,* 139 Md. 195, 201, 114 A. 884, 886 (1921)); *see also Fowler v. A & A Co.,* 262 A.2d 344, 347 (D.C.1970). By failing to transfer the telephone number upon the Plaintiff's request, the court finds that Bell Atlantic breached the contract arising from the customer agreement between Plaintiff and Bell Atlantic.

Bell Atlantic points to certain tariff provisions as authority for the proposition that it had no contractual duty to transfer the phone number and that the Debtor held no interest in the phone number. One provision in the tariff states that:

> At the request of the customer, service *may* be relocated to a different premises or to a different building at charges based on estimated costs provided that the service is relocated to a new location that is leased or owned by the same customer.

Plaintiff's Memorandum of Points and Authorities in Response to Defendant's Motion for Summary Judgment, Paper No. 55, at Exhibit A (emphasis supplied). Bell Atlantic's reliance on the tariff for this proposition is misplaced. A reasonable reading of this tariff is that it empowers Bell Atlantic to charge for relocation of phone numbers and otherwise regulate what charges may be assessed and what rebates shall be given for

**226**

service interruption attendant to a relocation. Bell Atlantic's argument that this provision gives Bell Atlantic absolute discretion to either honor or disregard a customer's request for relocation reads far too much into the simple word "may" in the context of the tariff.

Despite Bell Atlantic's assertions to the contrary, courts have generally found that debtors have an interest in their telephone number and that as such the number may constitute property of the estate. *See In re Fontainebleau Hotel Corp.,* 508 F.2d 1056, 1059 (5th Cir.), *reh'g denied,* 512 F.2d 1406 (5th Cir.1975); *In re Kassuba,* 396 F.Supp. 324, 326 (N.D.Ill.1975); *Directional Int'l, Ltd. v. Illinois Bell Telephone Co. (In re Personal Computer Network, Inc.),* 85 B.R. 507, 508 (Bankr.N.D.Ill.1988). Accordingly, upon proper instruction and payment of any required charges, Bell Atlantic was contractually obligated to perform the service available to its customers in general and to the Plaintiff, a debtor in this bankruptcy case, in particular. By failing to do so, it breached its contract with the Plaintiff. *Weiss,* 206 Md. at 203, 110 A.2d at 675.

As conceded by the Plaintiff at the hearing on motions for summary judgment, the damages for this breach are limited by the tariff to the sum of $50.00. Accordingly, the court finds that summary judgment on Count II of Plaintiff's complaint asserting a cause of action for breach of contract is appropriate and shall be entered in favor of the Plaintiff in the amount of $50.00.

### 3. *Count III: Violation of the Automatic Stay.*

In Count III of the complaint, Plaintiff asserts that Bell Atlantic's refusal to transfer the telephone number to the Wisconsin Avenue location violated the automatic stay provisions of the Bankruptcy Code. Section 362 of the Code provides that the filing of a petition commencing a bankruptcy case operates as a stay against various actions against property of the estate, including "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate". 11 U.S.C. § 362(a)(3). Debtor argues

that by refusing to honor its request to transfer the telephone number, Bell Atlantic "exercised control over property of the estate" in contravention of the automatic stay. Before deciding whether Bell Atlantic's refusal to transfer the telephone number constituted "an act to obtain possession" or "exercise control" within the meaning of section 362(a)(3), the court must first determine whether the telephone number is "property of the estate" protected by the automatic stay provisions of the Bankruptcy Code.

The filing of a petition commencing a bankruptcy case creates an estate comprised of all legal or equitable interests of the debtor in property, wherever located and by whomever held, as of the commencement of the case. 11 U.S.C. § 541(a). The scope of section 541(a) is broad, and includes both tangible and intangible property. *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 205, 103 S.Ct. 2309, 2311, 76 L.Ed.2d 515 (1983); H.R.Rep. No. 595, 95th Cong., 1st Sess. 367–68 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 82–83 (1978). There is no dispute that at the time the Plaintiff requested the transfer, the telephone number was assigned to the Plaintiff pursuant to a contractual arrangement with Bell Atlantic governed by the terms of the tariff, and that the Debtor had, at the very least, the right to use the number. Bell Atlantic argues, however, that according to the applicable tariff provisions and case law, the Debtor never held a "proprietary" right in the telephone number. In its Memorandum in Opposition to the Plaintiff's Motion for Partial Summary Judgment, Bell Atlantic cites to General Regulations Tariff P.S.C.–D.C. No. 21 ¶ 9, which provides that "the customer has no property right to the telephone number," and that "[t]he Telephone Company reserves the right to change such numbers when the Telephone Company deems it necessary to do so in the conduct of its business." Bell Atlantic thus contends that since it is the sole owner of the telephone number, the telephone number cannot be considered property of the estate.

The court finds otherwise. It is clear that at the time the request to transfer was made, the Debtor had at the very least a possessory interest in the telephone num-

ber. This possessory interest is protected by the automatic stay. *48th Street Steakhouse, Inc. v. Rockefeller Center, Inc. (In re 48th Street Steakhouse, Inc.),* 61 B.R. 182, 187 (Bankr.S.D.N.Y.1986), *aff'd,* 835 F.2d 427 (2d Cir.1987), *cert. denied,* 485 U.S. 1035, 108 S.Ct. 1596, 99 L.Ed.2d 910 (1988). The legislative history indicates that in addition to protecting property of the debtor as of the time the petition is filed, section 362(a)(3) also operates to stay any act to obtain property over which the estate has control or possession. *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 341 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 50 (1978). Thus even if Bell Atlantic's position that the Debtor did not have a proprietary interest in the telephone number is correct, the Debtor's right to use the telephone number constitutes a possessory interest protected by the stay provisions of section 362(a). Moreover, courts that have addressed the question have consistently decided that, notwithstanding contrary provisions in applicable tariffs, telephone numbers are property of the estate. *See In re Fontainebleau Hotel Corp.,* 508 F.2d 1056, 1059 (5th Cir.1975); *In re Kassuba,* 396 F.Supp. 324, 326 (N.D.Ill. 1975); *Directional Int'l, Ltd. v. Illinois Bell Telephone Co. (In re Personal Computer Network, Inc.),* 85 B.R. 507, 508 (Bankr. N.D.Ill.1988). In the case of *In re Personal Computer Network, Inc.,* the plaintiffs were the purchasers of substantially all of the debtor's assets. Included among the purchased assets were the debtor's telephone numbers and local, long distance and Watts lines. When the Illinois Bell Telephone Company (Illinois Bell) threatened to terminate the telephone numbers unless the plaintiffs agreed to satisfy the debtor's pre-petition obligations to Illinois Bell, the plaintiffs filed an adversary proceeding to obtain an injunction enjoining Illinois Bell from terminating the service. Bell responded by filing a motion to dismiss, arguing, *inter alia,* that because the telephone numbers were not property of the estate, the cause of action was not a core proceeding and therefore the court lacked jurisdiction to hear the complaint. *Id.* at 507–08.

The court denied the motion to dismiss, holding that the telephone numbers were property of the estate within the meaning of section 541 of the Bankruptcy Code and that jurisdiction was appropriate pursuant to 28 U.S.C. § 157(b)(2)(N). *Id.* at 509. Agreeing with the reasoning of the decisions in the cases of *In re Fontainebleau Hotel Corp.* and *In re Kassuba, supra,* the court found that the tariff, a self-serving document drafted by the telephone company itself, could not determine the definition of the term "property" as that term is used in federal bankruptcy law. *Id.*

This court adopts the reasoning of these decisions and finds that at the time the Debtor requested the transfer, the telephone number was property of the estate within the meaning of section 362(a)(3) and therefore protected by the automatic stay against any act to obtain possession or exercise control over it. As the Fifth Circuit recognized in *In re Fontainebleau Hotel Corp.,* telephone numbers are valuable business assets, much like buildings, furniture, and equipment. 508 F.2d at 1059. This is especially true with respect to a pizza delivery operation, in which the telephone number is often the most recognizable attribute of the business.

Having found that the telephone number was property of the estate, the court must next consider whether Bell Atlantic's refusal to transfer the telephone number to the Wisconsin Avenue location constituted an act to obtain possession or exercise control over the property in violation of the automatic stay. If the answer to this question is in the affirmative, then sanctions under section 362(h) may be warranted. That section provides that

> [a]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

11 U.S.C. § 362(h).

The purpose of the automatic stay, and particularly section 362(a)(3), is to preserve the assets of the debtor's estate and allow the debtor-in-possession or trustee to fashion an equitable procedure for the distribution of estate property. *Price & Pierce*

*Int'l, Inc. v. Spicers Int'l Paper Sales, Inc.,* 50 B.R. 25, 26 (S.D.N.Y.1985); H.R.Rep. No. 595, 95th Cong., 1st Sess. 341 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 50 (1978). The automatic stay gives debtors the breathing room needed to organize their affairs and otherwise maintain the status quo as to the relationship between the debtor, creditors, and other parties-in-interest. Bell Atlantic's refusal to transfer the telephone number to the Wisconsin Avenue location must be analyzed with these principles in mind.

 Consistent with the explicit purpose of section 362(a)(3), actions that tend to maintain the status quo are less likely to be considered violations of the automatic stay. *See, e.g., In re Warwick,* 179 B.R. 582, 586–87 (Bankr.W.D.Ark.1995); *In re Tillery,* 179 B.R. 576, 580 (Bankr.W.D.Ark.1995); *Sousa v. Bank of Newport,* 170 B.R. 492, 494 (D.R.I. 1994). On the other hand, affirmative acts to obtain possession of or control over estate property are more likely to be deemed as violations of section 362(a)(3). *See In re Richardson,* 135 B.R. 256, 259 (Bankr. E.D.Tex.1992) (holding that "any exercise of control [within the meaning of § 362(a)(3) ], to be sanctionable, must occur post-petition and involve an affirmative act on the part of a creditor."); *see also In re Computer Communications, Inc.,* 824 F.2d 725, 728 (9th Cir.1987) (finding that the unilateral termination of a joint marketing and development agreement violated the automatic stay); *Hudson v. United States (In re Hudson),* 168 B.R. 449, 453 (Bankr.S.D.Ga.1994) (holding that the IRS, by withholding pre-petition tax refund and using those funds to satisfy a pre-petition tax obligation, violated the automatic stay); *Martino v. First Nat'l Bank in Harvey (In re Garofalo's Finer Foods, Inc.),* 164 B.R. 955, 971 (Bankr.N.D.Ill.1994) (holding that bank's use of funds deposited in debtor's account to repay unauthorized extensions of overdraft credit violated stay), *aff'd in part and rev'd in part,* 186 B.R. 414 (N.D.Ill. 1995).

 This is not to say, of course, that a failure to act can never constitute a violation of the automatic stay. But in most instances where courts have found violations of the stay based on an act of omission, the unlawful act arises from a failure to cure a previous violation of the stay or otherwise restore the status quo. *See Ledford v. Fidelity Financial Servs. (In re Hill),* 174 B.R. 949, 954 (Bankr.S.D.Ohio 1994) (retention of automobile casualty insurance proceeds); *Taborski v. United States,* 141 B.R. 959, 965 (N.D.Ill. 1992) (retention by IRS of tax refunds that constituted estate property); *In re Richardson,* 135 B.R. 256, 259 (Bankr.E.D.Tex.1992) (failure to return car). Indeed, creditors who violate the automatic stay are obligated to take measures to restore the status quo. *In re Belcher,* 189 B.R. 16, 18 (Bankr. S.D.Fla.1995); *Commercial Credit Corp. v. Reed,* 154 B.R. 471, 476 (E.D.Tex.1993); *In re Bennett,* 135 B.R. 72, 76 (Bankr.S.D.Ohio 1992); *In re Miller,* 22 B.R. 479, 481 (D.Md. 1982).

The case of *Sousa v. Bank of Newport, supra,* provides a clear illustration of the principle that actions taken to maintain the status quo rather than for an improper purpose may not be considered violations of the automatic stay. In that case a bank placed an "administrative hold" on the debtors' checking account pending receipt of "sufficient evidence" that the funds in the account were, as asserted by the debtor, exempt from inclusion in the bankruptcy estate. 170 B.R. at 493. The bank did not freeze the account in order to set off funds against any debts owed to the bank by the debtors. *Id.* at 494. Furthermore, the bank advised the debtors that it would release the funds upon receiving a letter from the trustee or the debtors' attorney supporting the debtors' position that the funds were exempt. *Id.* at 493.

The court held that under these circumstances the bank was not "exercising control" over estate property within the meaning of section 362(a)(3). *Id.* at 494. The basis of the court's decision was the bank's motivation for freezing the account. If the bank had placed an administrative hold on the account for purposes of preserving its set-off rights, the court decided, the freeze would have violated the automatic stay. *Id.*[7] But

---

7. The Supreme Court of the United States has since determined that the placing of an adminis-

because the bank froze the account for the purpose of determining the proper ownership of the funds, displayed a willingness to release the funds upon notification that the funds were not part of the estate, and made no attempt to claim ownership or the right to control the funds, the court concluded that the automatic stay had not been violated and that no sanctions should be imposed. *Id.* The court found that the bank acted " 'in good faith to preserve the status quo, for the benefit of all creditors, pending verification as to whether the deposited funds were deemed property of the estate, or exempt property.' " *Id.* (quoting *In re Pimental,* 142 B.R. 26, 29 (Bankr.D.R.I.1992)).

 Similarly, Bell Atlantic's refusal to transfer the telephone number was not an attempt to gain leverage or otherwise improve its position with respect to the Debtor and the bankruptcy estate. Bell Atlantic did not terminate the telephone number or the Debtor's right to use it. Such actions would clearly have constituted violations of various stay provisions contained in section 362. *See, e.g., In re Farmers Markets, Inc.,* 792 F.2d 1400, 1404 (9th Cir.1986) (refusal of state to transfer liquor license held by debtors unless debtor paid delinquent taxes was an attempt to obtain payment and therefore constituted an act to collect a debt in violation of 362(a)(6)); *In re National Cattle Congress, Inc.,* 179 B.R. 588, 597 (N.D.Iowa 1995) (post-petition revocation of debtor's pari-mutual dog racing license constituted control of estate property in violation of sections 362(a)(1) and 362(a)(3)).

Bell Atlantic did not act in such a way as to threaten the assets of the Plaintiff's estate, and did not interfere with the status quo as to the relationship between the debtor, creditors, and other parties-in-interest. In fact, the telephone company did just the opposite. Bell Atlantic acted in good faith and attempted to maintain the status quo in the face of conflicting instructions concerning the transfer of the telephone number. Bell Atlantic's refusal to transfer the telephone

number in the absence of a court order approving the transfer was reasonable under the circumstances. Moreover, Bell Atlantic demonstrated a willingness to transfer the number upon authorization by the court that the proposed transfer was lawful. Under these circumstances, the court cannot find that Bell Atlantic's refusal to transfer the telephone number constituted a violation of the automatic stay warranting sanctions under section 362 of the Bankruptcy Code. Accordingly, the motion of Bell Atlantic for summary judgment as to Count III of Plaintiff's complaint shall be granted in favor of Bell Atlantic and against the Plaintiff.

---

trative hold by a bank upon an account to preserve a right of set-off (i.e. to preserve the status quo), where the bank immediately seeks relief from the bankruptcy court, does not violate the automatic stay. *Citizens Bank of Maryland v. Strumpf,* —— U.S. ——, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995).